888 A.2d 592

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**James R. KILLINGER, Appellee.**

Supreme Court of Pennsylvania.

Submitted Nov. 9, 2004.

Decided Dec. 27, 2005.

Ray Frank Gricar, J. Karen Arnold, Bellefonte, for the Com. of PA, appellant.

David Crowley, Bellefonte, for James R. Killinger, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice BAER.

We are asked to revisit Pennsylvania's Registration of Sexual Offenders Act (hereinafter, "Megan's Law II" or the "Act")[1] to determine whether a subsection of the Act's sanction provision violates the due process clause of the Fourteenth Amendment to the United States Constitution.[2] In *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003) (*Williams II*), this Court held that the Act's registration, notification, and counseling requirements, applicable to sex offenders deemed "sexually violent predators" (SVP), passed constitutional muster.[3] Conversely, in *Williams II*, we found

1. Act of May 10, 2000, P.L. 74, No. 18 (as amended, 42 Pa.C.S. §§ 9791–9799.7). The Act's predecessor, "Megan's Law I," Act of Oct. 24, 1995, P.L. 1079, Spec. Session No. 1, was held unconstitutional in large part by this Court in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999) (*Williams I*), prompting the Legislature's sweeping 2000 amendments, *supra*.

2. As a "pure question of law," our review of this statute is plenary. *Eagle Envtl., L.P., v. Commonwealth, Dep't of Envtl. Prot.*, 584 Pa. 494, 884 A.2d 867, 2005 WL 2806160, *7 (Pa.2005). There is, however, "a strong presumption that acts of the General Assembly are constitutional, and this Court will not declare such acts unconstitutional unless they clearly, palpably, and plainly violate the constitution." *Id.*, at 514–16, 884 A.2d at 880 (internal quotation marks omitted).

3. The statute defines a "sexually violent predator," in relevant part, as

unconstitutional the mandatory lifetime sanction imposed by the Act, 42 Pa.C.S. § 9795.2(d)(2) (repealed), upon SVP offenders who failed to comply with those provisions. In resolving this question, we expressly held for another day the question now before us: Whether the milder sanction imposed upon non-SVP offenders who fail to comply with the Act's registration provisions, 42 Pa.C.S. § 9795.2(d)(1) (repealed), is unconstitutional.[4] We now hold these sanctions constitutional. Thus, we reverse the trial court's contrary ruling.[5]

A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.
42 Pa.C.S. § 9792.

4. The repealed sanctions before this Court provide, in relevant part:
(d) Penalty.—
(1) An individual subject to registration under section 9795.1(a) who fails to register with the Pennsylvania State Police as required in this section commits a felony of the third degree.
(2) An individual subject to registration under § 9795.1(b)(1), (2) or (3) who fails to register with the Pennsylvania State Police as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime.
42 Pa.C.S. § 9795.2.

5. Since the events that precipitated the instant litigation, the General Assembly has amended 42 Pa.C.S. § 9795.2, acknowledging that this Court held the former § 9795.2(d)(2) unconstitutional in *Williams II*. *See* Act of Nov. 24, 2004, P.L. 1243, No. 152, § 8. The new penalty provision for violations of registration requirements under §§ 9795.1(a) and (b) is provided by 18 Pa.C.S. § 4915, *see* Act of Nov. 24, 2004, *supra*, § 1. This amendment replaced not only the former § 9795.2(d)(2), the provision providing penalties for violators of lifetime registration requirements imposed by the Act upon SVP offenders, which we found unconstitutional in *Williams II*, but also replaced § 9795.2(d)(1), the provision applicable to non-SVP offenders subject to ten-year registration under the Act and the subsection challenged in this case.

We are not called upon to assess the constitutionality of the penalties presently prescribed in 18 Pa.C.S. § 4915 for violations of 42 Pa.C.S. §§ 9795.1(a) and (b), which are diminished by comparison to the penalties prescribed by the former § 9795.2(d). The instant litigation, however, is not moot. Appellee, who faces the punishment imposed by the former § 9795.2(d)(1), and any other litigants whose cases are

Megan's Law II requires any offender convicted of a predicate offense, upon release, parole, or commencement of a sentence of intermediate punishment or probation, to register with the Pennsylvania State Police providing all "current or intended residences, all information concerning current or intended employment and all information concerning current or intended enrollment as a student." 42 Pa.C.S. § 9795.2(a)(1).[6] Furthermore, offenders must inform the Pennsylvania State Police within ten days of any change of residence or establishment of an additional residence. *Id.* § 9795.2(a)(2)(i). Under the penalty provision applicable to the case at bar at the relevant time, any violation of the above provisions would be treated as a third-degree felony. *Id.* § 9795.2(d)(1). The statutory maximum penalty for a third-degree felony is seven years' incarceration. 18 Pa.C.S. § 1103(3).

The background of the case at bar is neither disputed nor complicated. Appellee, James Killinger, was convicted in June 2000 of Indecent Assault,[7] a predicate crime under Megan's Law II. *See* 42 Pa.C.S. § 9795.1(a)(1). Thus, upon his release on parole, the Act required him to register with the Pennsylvania State Police, *id.* § 9795.2(a)(1), and thereafter to verify with the state police any change of registered address within ten days, *id.* § 9795.2(a)(2).

pending who were penalized pursuant to that since-amended provision, have a vested interest in our decision.

**6.** The subsection governing registration provides, in relevant part:

(a) **Registration.—**

(1) Offenders and sexually violent predators shall be required to register with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution, or upon commencement of a sentence of intermediate punishment or probation. For purposes of registration, offenders and sexually violent predators shall provide the Pennsylvania State Police with all current or intended residences . . . .

(2) *Offenders and sexually violent predators shall inform the Pennsylvania State Police within ten days of:*

(i) Any change of residence or establishment of an additional residence or residences.

42 Pa.C.S. § 9795.2(a).

**7.** *See* 18 Pa.C.S. § 3126(a)(7).

Immediately upon his release in February 2002, Appellee reported his address as 133 South Allegheny Street, Bellefonte, Pennsylvania. On September 23, 2002, he notified his probation officer, Jeremy Packer, of his move to 321 Bishop Street in Bellefonte. On January 28, 2003, Appellee reported to Officer Packer his move to another Bellefonte address, 401–33 Governor's Park Road, and indicated that he had lived there since November 2002.

Officer Packer contacted Trooper W.F. Sasserman of the Pennsylvania State Police to report his concern that Appellee might have violated the Act. Trooper Sasserman consulted the Megan's Law registry and discovered that Appellee had reported neither of the above-mentioned address changes to the Pennsylvania State Police. Police records still reflected Appellee's immediate post-release address on South Allegheny Street.[8]

On February 24, 2003, Trooper Sasserman filed a criminal complaint charging Appellee with two violations of § 9795.2(a)(2)(i).[9] In July 2003, following a preliminary hearing before a District Justice, Appellee was bound over to the Court of Common Pleas of Centre County, where the Commonwealth filed a criminal information charging Appellee with two counts of violating § 9795.2(a)(2)(i), a third-degree felony pursuant to § 9795.2(d)(1).

Thereafter, Appellee filed a pre-trial motion seeking dismissal of the charges on the basis that the penalty provision stated in § 9795.2(d)(1) is unconstitutional. The trial court

8. It appears that Appellee, in fact, notified the state police of his move to Governor's Park Road on January 19, 2003, more than a week before he notified Officer Packer of that move. Nevertheless, this evidence reveals an approximate two-month delay between Appellee's move to that address and his reporting of that move to the police, well in excess of the ten-day notice requirement set forth in the Act, in addition to his prior unreported move to Bishop Street.

9. Between Appellee's registration in February 2002 and the criminal complaint underlying this litigation, the Legislature amended § 9795(a). *See* Act of Oct. 17, 2002, P.L. 880, No. 127, § 4 (effective in 60 days). Appellee raises no challenge to the Commonwealth's reliance on the provision in effect at the time of the complaint and we see no cause to question its propriety.

agreed with Appellee and dismissed the charges, finding the penalty provision unconstitutional as a logical consequence of this Court's decision in *Williams II*. The court found that, "[a]lthough the penalty provisions were enacted to enforce remedial legislation, they constitute criminal punishment as they subject an offender to increased incarceration, a recognized punitive measure." *Commonwealth v. Killinger*, 64 Pa. D. & C.4th 369, 380 (Com.Pl.Centre Co.2003). Accordingly, it ruled that our holding in *Williams II* implicitly invalidated the sanctions for non-compliance applicable to non-SVP offenders as well as the mandatory lifetime sanctions for SVP offenders expressly invalidated in that case. The Commonwealth sought direct appeal to this Court.[10] We scheduled oral argument, but prior to argument the parties opted to submit this case on the briefs.

■ As previously noted, in *Williams II* we held that the mandatory lifetime sanction of probation (at a minimum) pursuant to § 9795.2(d)(2) for an SVP offender who failed to comply with the Act's notification, registration, and counseling provisions was unconstitutionally punitive. We so held because a necessary predicate determination to subject an offender to the enhanced punishment set forth in § 9795.2(d)(2) is his SVP status, a judicial determination conducted without a jury and subject to a "clear and convincing" standard of proof, 42 Pa.C.S. § 9795.4(e)(3),[11] a less rigorous standard than the reasonable doubt standard applicable to prosecution for substantive criminal offenses. Now we must consider whether the lesser sanctions imposed on a non-SVP offender who fails to comply with the registration provisions of the Act also

10. We have jurisdiction pursuant to 42 Pa.C.S. § 722, which provides:
The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

\* \* \* \*

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth ... any statute of this Commonwealth....

11. This subsection has remained unmodified throughout the time period relevant to this litigation and to the time of this filing.

offends the constitution. Accordingly, we begin our analysis by reprising our holding in *Williams II.*

In *Williams II,* we evaluated, *inter alia,* a challenge to the constitutionality of the registration, notification, and counseling provisions of Megan's Law II. Since our decision in *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999) (*Williams I*), we noted, the United States Supreme Court had held that "any judicial finding which results in punishment beyond a statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." *Williams II,* 832 A.2d at 968; *see Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We also noted that, under Megan's Law II, a determination of SVP status under 42 Pa.C.S. § 9795.4(e)(3) sufficient to incur SVP registration, notification, and counseling requirements with the concomitant sanctions for non-compliance was a matter to be determined by a judge under a "clear and convincing" standard of proof. *Williams II,* 832 A.2d at 968. Thus, if the sanctions visited upon an SVP offender for failure to comply with the SVP-specific registration, notification, and counseling provisions of the Act constituted criminal punishment, *Apprendi* would require their invalidation. Accordingly, the case required us to determine whether those sanctions constituted criminal punishment. *Williams II,* 832 A.2d at 968–69.

In assessing the character of the provisions, we reviewed the *Artway/Verniero* test articulated by the United States Court of Appeals for the Third Circuit. *See Artway v. Attorney General of New Jersey,* 81 F.3d 1235 (3d Cir.1996); *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997). This test calls upon a court to consider three elements in assessing the penal character of a provision: (1) the legislature's subjective intent in enacting the provision; (2) the objective intent behind the provision; and (3) the challenged provision's effect. *Williams II,* 832 A.2d at 970. The first element, we noted, requires consideration of whether the legislature intended to punish past conduct or instead sought to remedy a social problem. *Id.* The second element focuses on how comparable provisions have been viewed historically, and considers whether

(a) the measure's adverse effects cannot be explained solely by its remedial purpose; (b) similar measures have historically been considered punitive; or, (c) if the legislature intended the measure to serve a mixture of deterrent and salutary purposes, the deterrent purpose is an unnecessary complement to, or overwhelms, the measure's statutory operation, or the measure operates in an unusual manner or is inconsistent with its historically mixed purposes.

*Id.* at 970–71. Finally, *Artway/Verniero's* third inquiry considers whether the "sting of a measure is so harsh as a matter of degree that it constitutes punishment." *Id.* at 971 (quoting *Artway,* 81 F.3d at 1266). This test, we noted, overlaps substantially with the two-prong test utilized by the United States Supreme Court in resolving similar inquiries. Under that test, "the Court first inquires whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." *Id.* at 971 (citing, *inter alia, Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986)). The Court in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), we observed, reduced the objective "purpose and effect" inquiry to the following factors:

(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only upon a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Williams II,* 832 A.2d at 973 (citing *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554). Since our decision in *Williams I,* we noted, the United States Supreme Court, in *Smith v. Doe I,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), had applied its two-prong approach to Alaska's Megan's Law.

██ Applying the *Smith* inquiry, and focusing in particular on element seven of the *Mendoza–Martinez* test, we held that the sanctions imposed upon SVP offenders for failure to comply with the Act's registration, notification, and counseling provisions, insofar as they entailed the "recognized punitive measures" of "incarceration and probation," were unconstitutional. *Williams II*, 832 A.2d at 985. The excessiveness of the lifetime sanction there at issue informed our inquiry to the extent that we recognized that "even . . . incarceration [is] not punitive in all contexts," *id.* at 982 (citing *Verniero*, 119 F.3d at 1101–02), but the linchpin of our holding, rather than excessiveness, reflected the impermissibility of imposing greater punishment on SVP offenders than non-SVP offenders where the only difference between those two classes of offenders is a judicial finding by a diminished standard of proof. Thus, we severed the problematic penalty enhancement codified at 42 Pa.C.S. § 9795.2(d)(2).[12]

Against this background, the trial court in the case at bar concluded that *Williams II* demanded the invalidation of the lesser sanction of a third-degree felony imposed by the former § 9795.2(d)(1) upon a non-SVP offender's violation of Megan's Law II. The trial court's brief analysis of our holding in *Williams II* simply analogized the penalty provision in this case to the lifetime sanction in *Williams II* and ruled that the former, while milder than the latter, was categorically the same.

> The penalty provision applicable to the case at bar also provides an enforcement mechanism, with a disincentive for noncompliance. Although the disincentive for noncompli-

12. In severing the offending provisions, we noted that statutes that do not contain a provision concerning severability are presumed severable. *Williams II*, 832 A.2d at 986 (citing 1 Pa.C.S. § 1925). Severance is precluded only where, upon excision of the void provisions, the remaining statute can no longer be executed consistently with legislative intent. We found that the sanction provision constituted an "add-on" to the larger legislative scheme, and observed that enforcement would be possible even without the provision through civil contempt proceedings. Accordingly, we concluded that "it cannot reasonably be contended that the valid provisions of Megan's Law II are so dependent upon the penalty provisions that the General Assembly would not have enacted the former without the latter." *Id.*

ance is admittedly smaller (the Commonwealth has stated that sentencing would proceed as in any other criminal case) than in the case of the sexually violent predator, the disincentive is a criminal penalty nonetheless. As with the case of the sexually violent predator, the substantive offense for which conviction would subject defendant to a criminal penalty, proceeds directly from the Megan's Law II enforcement provisions, and, as in [Williams II], conviction would be a trivial matter.

Although the penalty provisions were enacted to enforce remedial legislation, they constitute criminal punishment as they subject an offender to increased incarceration, a recognized punitive measure. Conviction of a charge classified as a felony of the third degree seems to be in excess of what is needed to ensure compliance with the registration and notification procedures applicable to a defendant in this case.

*Killinger*, 64 Pa. D. & C.4th at 380 (citations omitted). Accordingly, the trial court concluded that our decision in *Williams II* necessarily invalidated the lesser sanction imposed upon a non-SVP offender who fails to comply with the Act's registration provisions.

The Commonwealth disagrees. First, the Commonwealth argues that this Court's refusal in *Williams II* to invalidate the entire sanction scheme for non-compliance with Megan's Law II, especially in light of the manifest excessiveness of the lifetime sanctions there at issue as contrasted with the Sentencing Guidelines-driven sentence offered by the sanction now before us, refutes the notion that *Williams II* required the result reached by the trial court in this case. It finds further support for its narrow construal of *Williams II* in our decision to sever as little of the Act as possible. The Commonwealth frames its argument in terms of the policy consequences. It argues that to uphold the trial court ruling would entirely deny the Commonwealth power to deter and sanction violations of Megan's Law II by any offenders, SVP or non-SVP.

The Commonwealth then turns to our reliance in *Williams II* on the United States Supreme Court's decision in *Apprendi* that "any judicial finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." *Williams II*, 832 A.2d at 968. It argues that, by invalidating the lifetime sanctions for SVP offenders who violate the Act, we left intact the Commonwealth's prerogative to prosecute violators under the Sentencing Guidelines for commission of a first-degree felony (in the case of SVP offenders) or a third-degree felony (in the case of non-SVP offenders).[13] This reading of *Williams II*, the Commonwealth contends, would leave the legislative enforcement scheme as drafted and as the Legislature intended, save for "the enhanced penalties found to be manifestly excessive" in *Williams II*.[14]

Appellee maintains that the trial court correctly determined that *Williams II* effectively precluded application of any criminal sanction to non-SVP offenders who violated the Act's registration provisions and left to the Commonwealth only civil contempt proceedings for purposes of enforcing compliance. He argues that the trial court in this case properly was concerned with the possible asymmetry of punishing non-SVP offenders who fail to comply with the Act's requirements with a long sentence of incarceration while permitting the Commonwealth to enforce the more stringent requirements imposed on SVP offenders only through contempt proceedings. He rejects as "unsubstantiated" the Commonwealth's argument that *Williams II* left open the possibility that SVP offenders might still be sanctioned pursuant to the provisions applicable to non-SVP offenders, arguing that SVP offenders

13. *Compare* 18 Pa.C.S. § 1103(1) (providing a maximum sentence for a first-degree felony of twenty years) *with id.* § 1103(3) (providing a maximum sentence for a third-degree felony of seven years).

14. The Commonwealth appears to treat this case as an opportunity not only to address the matter directly at hand—*i.e.*, the constitutionality of the Act's sanctions for non-SVP offenders who fail to comply with the Act's requirements—but also to clarify our prior ruling with regard to its precise effect on the remedial scheme applicable to non-compliant SVP offenders. For the reasons stated in note 15, *infra*, we decline the Commonwealth's invitation.

simply are excluded under the plain language of the subsection applicable to enforcement against non-SVP offenders.[15] Finally Appellee contests the Commonwealth's assertion that the trial court impermissibly expanded the application of *Williams II;* rather, he argues, the court "merely found that it would strain the parameters this Court set" in *Williams II* to find "that the registration requirements for Megan's Law [II] were civil and redemptive rather than punitive if an individual who belatedly notified the state police of his address change could be prosecuted months after that notification and face fourteen years['] incarceration." Brief for Appellee at 8.

The trial court's opinion and the arguments of the parties reflect a failure to grasp fully *Williams II's* supervention upon the United States Supreme Court's holding in *Apprendi* that any increase in a penal sanction beyond the statutory maximum for the underlying offense may only occur upon findings of fact proved to a jury under a reasonable doubt standard. In *Williams II,* we held that the sanctions constituted an increased penalty as a consequence of a party's SVP status. That status under the Act, however, does not require proof beyond a reasonable doubt as found by a jury. Instead, under Megan's Law II, SVP status is determined by a judge upon a showing by the Commonwealth by clear and convincing evidence that the offender is, in fact, an SVP. Thus, the sanctions specifically targeting SVP offenders for enhanced punishment, insofar as they depended on that underlying finding by a diminished standard of proof, violated *Apprendi.* It is true

15. The Commonwealth notes that SVP offenders are subject to the lifetime registration, notification, and counseling requirements we found constitutional in *Williams II,* and argues, in effect, that SVP offenders, as *a fortiori* non-SVP offenders, are at least subject to the sanctions imposed upon non-SVP offenders for non-compliance—under the circumstances of this case, the third-degree felony sanction imposed by § 9795(d)(1). Appellee, however, correctly observes that SVP offenders are not among those specifically identified in subsection (d)(1), and thus contends that they necessarily are excluded from the subsection (d)(1) sanction. This presents an interesting question, but one clearly outside the ambit of the issue before us in the instant case. Furthermore, insofar as these provisions have since been repealed, there is no guarantee that the question will ever arise. In any event, we leave consideration of this question for an appropriate case.

that we couched our ruling in that case in terms of "manifest excessiveness," and that the sanction faced by the offender in that case far exceeded the sanction presented in this case insofar as, at a minimum, it entailed a sentence of lifetime probation. The excessiveness of the penalty in *Williams II,* however, merely underscored the impropriety of the penalty under *Apprendi.* Indeed, the penalty's excessiveness affected the outcome only insofar as excessiveness was an aspect of the inquiry regarding the punitive nature of the penalty called for under *Apprendi* pursuant to the factors enumerated in *Mendoza–Martinez.*

In the instant case, however, Appellee committed a predicate offense under Megan's Law II and thus was subject, upon conviction by proof beyond a reasonable doubt, to such punishment as attaches by law to that offense. Thus, Appellee was subject to the penalty for the underlying offense, the applicable registration provisions of Megan's Law II, and the sanctions imposed upon violation of these provisions, all of which are plainly visible on the face of the governing statute, and none of which depend on judicial fact-finding under a diminished standard of proof. This case, therefore, is categorically distinguishable from *Williams II.* Upon his unchallenged conviction of indecent assault, Appellee's sentence entailed all that the Legislature imposed for such an offense, including the various measures incident to Megan's Law II.

For the foregoing reasons, we hold that the sanction challenged in this case does not offend the United States Constitution under *Apprendi* and progeny. The sanction attaches to Appellee pursuant to his conviction for a predicate offense under the Act, an event that in itself does not implicate the constitutional issue addressed by *Apprendi.* No judicial fact-finding, nor any fact-finding by a diminished standard of proof, triggered a status relevant to the severity of the penalty, as was the case in *Williams II.* Furthermore, we decline to meddle with a clear statute simply due to the specter of inconsistencies raised by Appellee, in particular the possibility that non-SVP offenders will face harsher sanctions than SVP offenders. Nothing in this opinion should be under-

stood to enshrine such a consequence. Further, any such asymmetries should be addressed not by this Court but by the Legislature. We will not interfere any more than the constitution requires with the Legislature's deliberative process in refining the treatment of sexual offenders to best protect the citizens of the Commonwealth.[16] Accordingly, the trial court's ruling that 42 Pa.C.S. § 9795.2(d)(1), a since-repealed subsection of Megan's Law II under which the Commonwealth sought to punish Appellee, is unconstitutional is reversed. The case is remanded for further proceedings consistent with this Opinion.

Chief Justice CAPPY, and Justices CASTILLE and NIGRO, NEWMAN, SAYLOR and EAKIN join the opinion.

---

16. *Cf. Williams II,* 832 A.2d at 973 ("[O]nly the clearest proof that a law is punitive may overcome a legislative categorization to the contrary" (internal quotation marks omitted).); *id.* at 982 (approving *Verniero's* conclusion, in assessing a constitutional challenge to New Jersey's Megan's Law, that "the state's interest in protecting the public against sexually violent predators is so great that it justifies the adverse effects that community notification might have upon the registrant").