910 A.2d 10

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Gerald E. WILSON, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 8, 2006.

Decided Nov. 21, 2006.

Michael T. Madeira, State College, J. Karen Arnold, Bellefonte, Carolyn Michelle Fenton, for the Com. of PA, appellant.

Sean Patrick McGraw, for Gerald E. Wilson, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

### *OPINION*

Justice BALDWIN.

We review whether the provisions of Megan's Law [1] (Megan's Law II or Act) authorizing the imposition of criminal liability for failure to comply with the Act's reporting requirements are unconstitutional. In *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003) (*Williams II*), we severed the lifetime penalty provisions applicable to sexually violent predators (SVP) from the Act because the Act required the judge, not a jury, to determine by a diminished standard of proof whether an offender was an SVP. This determination subject-

---

[1]. 42 Pa.C.S. §§ 9791–9799.9. Act of May 10, 2000, P.L. 74, No. 18. This is the second enactment of Megan's Law. A substantial portion of "Megan's Law I," Act of Oct. 24, 1995, P.L. 1079, Spec. Session No. 1, was ruled unconstitutional by this Court in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999) (*Williams I*).

ed him to a punishment which exceeded the statutory maximum for failure to comply with the Act's reporting requirements. We held that the process violated the offender's Sixth Amendment right to a trial by jury pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The instant matter presents a different issue. As in our recent decision in *Commonwealth v. Killinger*, 585 Pa. 92, 888 A.2d 592 (2005), where no SVP determination occurs, the constitutional concerns that required us to sever the penalty provisions in *Williams II* are absent. As a result, we find the remaining provisions of Megan's Law II, which establish criminal liability for failure to comply with the Act's requirements, are constitutional. Therefore, we reverse the order of the trial court, and remand for further proceedings consistent with this opinion.

## I.

### *MEGAN'S LAW*

Megan's Law II, 42 Pa.C.S. §§ 9791–9799.9, was enacted to "protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S. § 9791(b). The Act sets forth certain reporting requirements with which an offender must comply following his release from incarceration. These requirements are not only applicable to anyone deemed a sexually violent predator (SVP), but also to an offender not designated an SVP[2] who is convicted of one of certain predicate offenses enumerated in the Act. *See* 42 Pa.C.S. § 9795.1 (registration of sexual offenders). *See also infra* notes 3 and 4.

Megan's Law II mandates that any offender who is convicted of any of the Act's predicate offenses must: (1) register his current residence or intended residence with state police upon

---

**2.** *See* 42 Pa.C.S. § 9795.4 (procedure for SVP determination); 42 Pa.C.S. § 9792 (definition of SVP).

release from incarceration, parole from a correctional institution, or commencement of an intermediate punishment or probation; (2) inform the state police within ten days of a change of residence; and (3) register within ten days with a new law enforcement agency after establishing residence in another state. *See* 42 Pa.C.S. § 9795.2(a). State police officials must then forward this data, together with fingerprint and photographic information obtained from the sentencing court, *See* 42 Pa.C.S. § 9795.3(4), to the chief of police of the locality where the offender will reside, following the change of address or release from prison. *See* 42 Pa.C.S. § 9795.2(c). Where the offender is an SVP, the police chief must then notify the offender's neighbors, day care operators and school officials within the municipality. *See* 42 Pa.C.S. § 9798(b). The data sent to those recipients include the offender's name, address, offense, and photographic information (if available), as well as notice of the fact that he has been determined by a court to be an SVP (if such determination was made for that offender), "which determination has or has not been terminated as of a date certain." *See* 42 Pa.C.S. § 9798(a). If determined to be an SVP, the offender's name and address, including any subsequent change of address, is also sent to the victim of the offense, until the victim requests that such notification be terminated. *See* 42 Pa.C.S. § 9797; *Williams II*, 574 Pa. 487, 832 A.2d 962 (2003).

Megan's Law II classifies offenders in three separate categories. Depending upon the category into which an offender fits, the Act designates the length of time he must comply with the above reporting requirements, as well as the sanction imposed for non-compliance. An offender is classified according to his adjudication as an SVP or the nature of the predicate crime for which he was convicted. The classifications are: (1) an offender adjudicated an SVP; (2) a non-SVP convicted of one of the more severe crimes enumerated in 42 Pa.C.S. § 9795.1(b)(2) (non-SVP, lifetime reporter)[3]; and

3. The offenses that subject a non-SVP offender to the lifetime reporting requirement are 18 Pa.C.S. § 3121 (rape); 18 Pa.C.S. § 3123 (involuntary deviate sexual intercourse); 18 Pa.C.S. § 3124.1 (sexual assault);

(3) a non-SVP convicted of one of the less severe crimes enumerated in 42 Pa.C.S. § 9795.1(a)(1) (non-SVP, ten-year reporter).[4] Once adjudicated an SVP, the offender must register pursuant to the above provisions for his lifetime. *See* 42 Pa.C.S. § 9795.1(b)(3). Non–SVPs convicted of one of the more serious offenses are also required to report for their lifetimes. 42 Pa.C.S. § 9795.1(b)(2). A non-SVP convicted of one of the less severe predicate offenses must comply with the reporting provisions for a period of ten years following release. 42 Pa.C.S. § 9795.1(a)(1). Failure to comply with the applicable reporting requirements results in a separate criminal offense. For those subject to the ten-year reporting requirement, failure to comply constitutes a felony of the third degree, 42 Pa.C.S. § 9795.2(d)(1), for which the maximum penalty is seven years of incarceration. 18 Pa.C.S. § 1103(3). However, for those subject to the lifetime reporting requirements, either an SVP or a non-SVP lifetime reporter, failure to comply constitutes a felony of the first degree, 42 Pa.C.S. § 9795.2(d)(2).[5]

18 Pa.C.S. § 3125 (aggravated indecent assault); and 18 Pa.C.S. § 4302 (incest) where the victim is under 12 years of age. *See* 42 Pa.C.S. § 9795.1(b)(2).

4. The enumerated crimes giving rise to the ten year reporting requirement are 18 Pa.C.S. § 2901 (kidnapping) where the victim is a minor; 18 Pa.C.S. § 3126 (indecent assault) where the offense is a misdemeanor of the first degree; 18 Pa.C.S. § 4302 (incest) where the victim is 12 years of age or older but under 18 years of age; 18 Pa.C.S. § 5902(b) (prostitution and related offenses) where the actor promotes the prostitution of a minor; 18 Pa.C.S. § 5903(a)(3),(4), (5), or (6) (obscene and other sexual materials and performances) where the victim is a minor; 18 Pa.C.S. § 6312 (sexual abuse of children); 18 Pa.C.S. § 6318 (unlawful contact with minor); and 18 Pa.C.S. § 6320 (sexual exploitation of children). Further, individuals convicted of an attempt to commit any of the above listed crimes or an attempt to commit any of the crimes listed in 42 Pa.C.S. § 9795.1(b)(2), see supra note 3, are also subject to the ten year reporting requirement. *See* 42 Pa.C.S. § 9795.1(a)(1).

5. Prior to our decision in *Williams II*, failure to comply as a lifetime reporter resulted in a mandatory minimum sentence of lifetime probation and a maximum of lifetime imprisonment. *See* infra for a discussion on *Williams II*. As a result of that decision, the General Assembly repealed the penalty provisions in 42 Pa.C.S. § 9795.2(d)(1) and (2). *See* Act of Nov. 24, 2004, P.L. 1243, No. 152, § 8. The penalty provi-

## II.

### BACKGROUND

On August 13, 2001, Appellee, Gerald F. Wilson, pled guilty to aggravated indecent assault, 18 Pa.C.S. § 3125, and indecent assault, 18 Pa.C.S. § 3126. Wilson was sentenced to eleven-and-a-half months to twenty-three-and a-half months of incarceration, to be followed by a ten year term of probation. Both aggravated indecent assault and indecent assault are predicate crimes under Megan's Law. Aggravated indecent assault falls within the scope of 42 Pa.C.S. § 9795.1(b)(2), subjecting Appellee to the lifetime reporting requirements.

Once released from incarceration, Appellee complied with the applicable reporting requirements by registering his Spring Township, Centre County address with the Pennsylvania State Police. Subsequently, Appellee sought to move to Montana. He attempted to have his probation and parole transferred to that state; however, Montana refused to assume Appellee's supervision. Ignoring Montana's refusal, Appellee moved there. He failed to inform the Pennsylvania State Police of his move. Moreover, he failed to provide the Pennsylvania State Police with his annual address verification. Centre County's Probation Office issued a warrant for his arrest for probation violations.

Subsequently, he was arrested in Montana, returned to Pennsylvania, and then charged with two violations of Megan's Law II for failing to register his address with the Pennsylva-

sions for violations of the reporting requirements of the Act can now be found at 18 Pa.C.S. § 4915.

Although the penalty provisions have been repealed and replaced, this matter is not moot. As stated in our decisions in *Williams II* and *Commonwealth v. Killinger*, 585 Pa. 92, 888 A.2d 592 (2005), the Appellee, as well as many other litigants sentenced under the original Act have a vested interest in our decision. On November 24, 2004, the General Assembly enacted 18 Pa.C.S. § 4915, effective January 23, 2005, which defines the criminal offenses and grading for violations of the Act's registration requirements. The section replaced the criminal liability provisions previously defined in the Act itself. Nonetheless, any offender sentenced to comply with Megan's Law II prior to the effective date of 18 Pa.C.S. § 4915 is governed by the Act's criminal liability and offense gradation provisions, not 18 Pa.C.S. § 4915.

nia State Police and failing to provide the Pennsylvania State Police with the annual address verification. *See* 42 Pa.C.S. §§ 9795.2(d)(2) and 9796(e)(2). As a result, Appellee's parole was revoked and he was re-sentenced on his original conviction to an aggregate term of twenty-four to forty-eight months incarceration, to be followed by consecutive six-year terms of probation.

In March 2004, Appellee filed a Motion to Quash the indictment on the Megan's Law II violations. He relied on the decision of the same trial court in *Commonwealth v. Killinger*, 64 Pa.D. & C. 4th 369 (Ct.Com.Pl.Centre Co.2003).[6] The trial court in *Killinger*, interpreting our decision in *Williams II*, held that the penalties for reporting violations for persons not adjudicated SVPs were unconstitutional. *Id.* Accordingly, the trial court granted Wilson's Motion to Quash. The Commonwealth appealed. We ordered both parties to submit additional briefs addressing the effect our opinion in *Commonwealth v. Killinger*, 585 Pa. 92, 888 A.2d 592 (2005) had on this matter.[7]

The Commonwealth argues that the trial court erred in ruling that criminal liability for reporting violations for non-SVPs is unconstitutional. Accordingly, the Commonwealth urges a narrow reading of *Williams II*, arguing the decision severed only the penalty provisions that we found in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as applicable to SVPs, but did not find the entire scheme of separate criminal prosecutions for violating Megan's Law's reporting provisions unconstitutional. The

**6.** This decision was the basis for our decision in *Commonwealth v. Killinger*, 585 Pa. 92, 888 A.2d 592 (2005), discussed *infra*.

**7.** We have jurisdiction over this matter pursuant to 42 Pa.C.S. § 722(7), which provides:

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:
* * *
(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth ... any statute of this Commonwealth....

Commonwealth contends that the trial court misread our holding in *Williams II*, and in so doing, erroneously expanded its reach. The Commonwealth also argues that our recent *Killinger* decision, which clarified *Williams II*, confirms the constitutionality of the remaining portions of Megan's Law, including the portions subjecting offenders to additional criminal prosecution for failing to comply with the Act's reporting provisions.

Appellee Wilson agrees with the trial court and argues that convicting an offender of a first-degree felony for failing to report, register, or verify his address is unduly oppressive and unreasonable, thereby violating due process. He contends that *Williams II* severed all mandatory penalties of Megan's Law for all categories of offenders, not just SVPs, because "such measures are manifestly in excess of what is needed to ensure compliance." *Williams II*, 832 A.2d at 986. Appellee's Brief at 5. According to Wilson, convicting a violator of a first-degree felony and subjecting him to the penalties proscribed under the Sentencing Guidelines similarly constitutes manifest excessiveness and undue oppression. Wilson acknowledges that his case is similar to *Killinger* in that neither case involved a finding of SVP status. However, he distinguishes the case, arguing the substantive consequences of this case differ radically from *Killinger* based on the severity of the potential punishment Wilson faces compared to Killinger. We disagree.

After a careful review of *Williams II* and *Killinger*, we agree with the Commonwealth. The portions of Megan's Law authorizing criminal prosecutions for failing to comply with the Act's reporting requirements are constitutional.

## III.

### DISCUSSION

Resolution of this issue requires an examination of our holdings in *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003) (*Williams II*) and *Commonwealth v. Killinger*, 585

Pa. 92, 888 A.2d 592 (2005). *Williams II* was decided in the wake of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that "any judicial finding which results in punishment beyond a statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. In *Williams II*, we held that the registration, notification and counseling requirements of the Act were constitutional, while conversely holding that the mandatory lifetime punishment applicable to SVPs, 42 Pa.C.S. § 9795.2(d)(2), for failing to comply with the registration, notification, and counseling requirements was unconstitutional.

Pursuant to Megan's Law II, SVP status was to be determined by a judge using a "clear and convincing" standard of proof. 42 Pa.C.S. § 9795.4(e)(3). *Williams II*, 832 A.2d at 968. Once determined to be an SVP, the offender is subjected to the Act's lifetime registration, notification, and counseling requirements. Failure to comply with the Act's requirements resulted in a conviction of a first-degree felony, with a mandatory minimum punishment of lifetime probation and a maximum penalty of lifetime imprisonment, 42 Pa.C.S. § 9795.2(d)(2) (repealed), a penalty beyond the otherwise applicable statutory maximum of twenty years for a first-degree felony. 18 Pa.C.S. § 1103(1). *Williams II* initially required us to determine whether the registration, notification, and counseling requirements themselves constituted criminal punishment. Where an SVP is involved, if the lifetime requirements are found to be criminal punishment, *Apprendi* necessitates their invalidation, as the punishments would extend beyond any statutory maximum predicated on a finding by a judge employing a diminished standard of proof.

Previously, in *Commonwealth v. Gaffney*, 557 Pa. 327, 334, 733 A.2d 616, 619–20 (1999), a companion case to *Williams I*, to determine whether the Act's reporting requirements are penal in nature thereby constituting criminal punishment, we utilized the *Artway/Verniero* test promulgated by the Third Circuit Court of Appeals. *See Artway v. Attorney General of*

*New Jersey,* 81 F.3d 1235 (3d Cir.1996); *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997). In *Williams II,* Justice Saylor articulated the *Artway/Verniero* test as follows:

> The *Artway/Verniero* standard involves three elements, legislative (subjective) intent, objective intent or purpose[,] and effects. Under the first element, the court looks to whether the adverse effect upon the individual results from a desire by the Legislature "to punish past conduct or is [instead] a by-product of a bona fide legislative effort to remedy a perceived societal problem." *Verniero,* 119 F.3d at 1093. The second inquiry focuses primarily upon whether analogous measures have been regarded as punishment in the past. Under this prong, the challenged statute will be deemed punitive if any of several conditions is met: (a) the measure's adverse effects cannot be explained solely by its remedial purpose; (b) similar measures have historically been considered punitive; or (c) if the legislature intended the measure to serve a mixture of deterrent and salutary purposes, the deterrent purpose is an unnecessary complement to, or overwhelms, the measure's salutary operation, or the measure operates in an unusual manner or is inconsistent with its historically mixed purposes. *See Verniero,* 119 F.3d at 1093. The final *Artway/Verniero* prong examines whether the "sting of a measure is so harsh as a matter of degree that it constitutes punishment." *Artway,* 81 F.3d 1235.

*Williams II,* 832 A.2d at 970–71 (certain citations omitted).

■■■ However, at the time *Gaffney* was decided, the United States Supreme Court had not yet addressed whether Megan's Law's reporting requirements were unconstitutionally punitive. Since that time, the Supreme Court decided *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), where the Court employed its traditional two-level inquiry and held that the reporting requirements of Alaska's Megan's Law were non-punitive. The Court's traditional test requires a court to first "inquire whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose

or effect as to negate the legislature's non-punitive intent." *Williams II*, 574 Pa. at 503, 832 A.2d at 971, citing *Allen v. Illinois*, 478 U.S. 364, 368–69, 106 S.Ct. 2988, 2992, 92 L.Ed.2d 296 (1986); *United States v. Ward*, 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). To analyze the latter factor, the Supreme Court employs a balancing test of several factors first announced in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The *Mendoza–Martinez* factors include:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Williams II*, 832 A.2d at 973, citing *Mendoza–Martinez* 372 U.S. at 168–69, 83 S.Ct. 554. Because *Smith* involved the reporting requirements of Megan's Law, we found the Supreme Court's two-pronged approach to be the proper method to analyze Pennsylvania's Megan's Law's requirements to determine whether they are unconstitutionally punitive as well. After a lengthy examination of the *Mendoza–Martinez* factors, we ultimately concluded that the Act's registration, notification, and counseling requirements were non-punitive. *Id.*, 574 Pa. at 524–25, 832 A.2d at 984. The reporting requirements did not implicate the *Apprendi* rule. *Id.* However, we then examined the penalty provisions applicable to SVPs [8] who failed to comply with the lifetime registration and verification requirements, 42 Pa.C.S. § 9795.2(d)(2) [9], and 42

8. SVPs were subject to the applicable penalty provisions via then existing 42 Pa.C.S. § 9795.1(b)(3).

9. Former 42 Pa.C.S. § 9795.2(d)(2) provided:
   An individual subject to registration under *section* 9795.1(b)(1), (2), or (3) who fails to register with the Pennsylvania State Police as

Pa.C.S. § 9796(e)(2).[10] We held those penalty provisions unconstitutional under *Apprendi* and severed them, as applicable to SVPs, from the Act. *Williams II,* 574 Pa. at 526–28, 832 A.2d at 985–86.

Critical to our determination was the statutory requirement to sentence an SVP who failed to comply with a mandatory minimum term of lifetime probation up to a maximum penalty of life in prison. Appellee suggests we invalidated the provisions because they were "manifestly excessive." While we did characterize the measures as "manifestly in excess of what is needed to ensure compliance," *Williams II,* 574 Pa. at 527, 832 A.2d at 962, easily finding them punitive, we invalidated them because the *process* by which an offender was deemed an SVP could not, consistent with *Apprendi, support additional criminal punishment beyond the maximum that* was otherwise imposable. We elucidated this concept again in *Killinger:*

> The excessiveness of the penalty in *Williams II,* however, merely underscored the impropriety of the penalty under *Apprendi.* Indeed, the penalty's excessiveness affected the outcome only insofar as excessiveness was an aspect of the inquiry regarding the punitive nature of the penalty called for under *Apprendi* pursuant to the factors enumerated in *Mendoza–Martinez.*

*Killinger,* 888 A.2d at 600.

The SVP classification was not proven to a jury beyond a reasonable doubt, which *Apprendi* requires. The statute required a finding by a judge applying a lesser standard of clear and convincing evidence. Former 42 Pa.C.S. § 9795.4(e)(3).

required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime.

10. Similarly, former 42 Pa.C.S. § 9796(e)(2) provided:

An individual subject to registration under *section* 9795.1(b)(1), (2), or (3) who fails to verify his address as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime.

Therefore, we severed the penalty portions from the Act as they applied to SVPs only, leaving the remainder of the Act intact. Since we did not specifically state in *Williams II* precisely which language was removed to effectuate the severance, we do so now. Former 42 Pa.C.S. § 9795.2(d)(2) read as follows:

An individual subject to registration under *section* 9795.1(b)(1), (2), or (3) who fails to register with the Pennsylvania State Police as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime.

Similarly, former § 9796(e)(2) provided:

An individual subject to registration under *section* 9795.1(b)(1), (2), or (3) who fails to verify his address as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime.

To be clear, the language ", or (3)" must be stricken from the Act in order to sever SVPs from the applicability of these punishment provisions. Further, to properly interpret the Act, as it remains applicable to certain non-SVP offenders pursuant to § 9795.1(b)(1) and (2), we must insert the word "or" between (b)(1) and (2) in former § 9795.2(d)(2) and § 9796(e)(2).[11] Because our decision in *Williams II* dealt strictly with SVPs, we did not address the remaining offender classifications in Megan's Law II.

In *Killinger,* we answered a question left open by *Williams II*: whether the milder sanction imposed on non-SVP, ten year reporters who fail to comply with the Act's registration provisions, 42 Pa.C.S. § 9795.2(d)(1) (repealed), is unconstitu-

11. *"Words and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor any way affect its scope and operation, may be added in the construction thereof."* See *1 Pa.C.S. § 1923(c).*

tional. *Killinger*, 888 A.2d at 593. In *Killinger*, the Appellee was convicted of Indecent Assault,[12] but was not adjudicated an SVP. Thus, he fell into the category of offenders where, upon release, he was required to comply with the Act's registration and reporting requirements for a period of ten years. 42 Pa.C.S. § 9795.1(a)(1). Failure to comply constituted a third-degree felony.[13] 42 Pa.C.S. § 9795.2(d)(1).

Killinger was released and subsequently failed to comply with the Act's reporting requirements. He was arrested and charged with two violations under 42 Pa.C.S. § 9795.2(a)(2)(i), both third-degree felonies. *See* 42 Pa.C.S. § 9795.2(d)(1). He filed a pre-trial motion to dismiss the charges, claiming § 9795.2(d)(1) was unconstitutional. The trial court granted the motion finding that *Williams II* "invalidated the sanctions for non-compliance applicable to non-SVP offenders as well as the mandatory lifetime sanctions for SVP offenders expressly invalidated in that case." *Killinger*, 888 A.2d at 596. *See also Killinger*, 64 Pa. D. & C. 4th at 380. We reversed and found the Act, as applied to non-SVPs, to be constitutional.

After a review of *Williams II*, we stated:

. . . the sanction challenged in this case does not offend the United States Constitution under *Apprendi* and progeny. The sanction attaches to Appellee pursuant to his conviction for a predicate offense under the Act, an event that in itself does not implicate the constitutional issue addressed by *Apprendi.* No judicial fact-finding, nor any fact-finding by a diminished standard of proof, triggered a status relevant to the severity of the penalty, as was the case in *Williams II*.

*Killinger*, 888 A.2d at 600–01.

The case before us presents a constitutional challenge similar to that in *Killinger.* However, Appellee is classified as a non-SVP, lifetime reporter. Thus, failure to comply with the lifetime requirements results in a first-degree felony. 42

**12.** 18 Pa.C.S. § 3126(a)(7).

**13.** The statutory maximum punishment for a third-degree felony is seven years. 18 Pa.C.S. § 1103(3).

Pa.C.S. § 9795.2(d)(2). Coincidently, the trial court in the case at bar was the same trial court that invalidated the penalty provisions for non-SVP, ten year reporters in *Killinger*. Prior to the filing of our *Killinger* decision reversing the trial court, the trial court in the instant case granted Appellee's Motion to Quash the indictment, relying on its own decision in *Commonwealth v. Killinger*, 64 Pa. D. & C. 4th 369 (Ct.Com.Pl.Centre Co.2003).

The instant case is immediately distinguishable from *Williams II*. It falls within the sound reasoning of *Killinger*. In *Williams II*, the factors which led to our invalidation of the SVP penalty provisions stemmed from the *process* by which the SVP determination itself was effectuated. Only where a judge, rather than jury, makes an SVP determination by a diminished standard of proof was an offender subject to the lifetime penalty provisions. This violated *Apprendi*. Logically, then, where an offender is not adjudicated an SVP, the constitutional concerns present in *Williams II* are not implicated. For this reason, this part of *Williams II* does not control the disposition of the case at bar.

Here, the Appellee, after being convicted of a predicate offense delineated in the Act, was

> subject to the penalty for the underlying offense, the applicable registration provisions of Megan's Law II, and the sanctions imposed upon violation of these provisions, all of which are plainly visible on the face of the governing statute, and none of which depend on judicial fact-finding under a diminished standard of proof.

*Killinger*, 888 A.2d at 600. The reporting requirements and penalties for non-compliance are merely a consequence of the offender's underlying conviction for the predicate offense and raise no *Apprendi* concerns. Thus, *Killinger* controls the disposition of this case and we find that the Act's provisions imposing criminal liability for non-compliance are constitutional.

Appellee concedes that this case is facially similar to *Killinger*, yet maintains that this case should be controlled by

*Williams II.* See Supplemental Brief for Appellee at 2. He argues that this case substantively differs from *Killinger* because the maximum penalty Killinger could have faced was up to seven years imprisonment, while Appellee faces a mandatory minimum penalty of lifetime probation and a maximum of lifetime imprisonment. He maintains that this penalty is excessive, and utilizes an example where an offender is merely one hour late in reporting but must then face a lifetime sanction under the strictures of the Act. In essence, Appellee argues that, due to the severity of the punishment a non-SVP, lifetime reporter faces, this case should nonetheless be controlled by *Williams II.* However, Appellee's excessiveness claim does not arise from *Apprendi* or any judicial fact finding. Rather, his claim appears to originate from an alternative claim in his Motion to Quash the indictment.

■ In his Motion to Quash, Appellee argued that sections 9795.2(d) and 9796(e) of the Act were "constitutionally infirm because they bear no rational relationship to a legitimate state interest." Further, Appellee averred that the sections "violate due process, bill of attainder, *ex post facto,* and cruel and unusual punishment provisions of the United States and Pennsylvania Constitutions." *See* Appellee's Motion to Quash dated March 17, 2004, at 2, paragraphs 10 and 11, R. 6a. The trial court, as aforementioned, quashed the indictment relying on its opinion in *Killinger,* and adopted that opinion for the instant case. R. 31a. In the trial court's opinion in *Killinger,* it expressly declined to address similar claims made by Killinger, instead mistakenly relying on *Williams II. See Killinger,* 64 Pa. D. & C. 4th at 375. As such, the lower court has not thoroughly reviewed Appellee's excessiveness claim. Consequently, because Appellee's excessiveness claim is not squarely before us, we, too, decline to address it now. It must be noted, however, as the non-aggrieved party, Appellee had no duty to cross-appeal to preserve the remaining claims in his Motion to Quash and, therefore, those claims are not waived. *See* Pa.R.A.P. 501.

576

Accordingly, we reverse the order of the lower court and remand the case to the trial court for consideration of Appellee's remaining claims delineated in his Motion to Quash.

Chief Justice CAPPY, and Justices CASTILLE, NEWMAN, SAYLOR and BAER join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN concurring.

I agree with the majority that *Commonwealth v. Killinger*, 585 Pa. 92, 888 A.2d 592 (2005), controls, and the trial court's order should be reversed. However, I would put aside any discussion of other Megan's Law concerns which are not before the Court at this time.