J-A24015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM MICKELSON | |
| Appellant | No. 1487 EDA 2013 |

Appeal from the Judgment of Sentence April 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002107-2012;
CP-51-CR-0002108-2012

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:           **FILED OCTOBER 10, 2014**

Appellant, William Mickelson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for attempted rape, attempted sexual assault, burglary, criminal trespass, false imprisonment, and simple assault.[1]  We affirm.

The trial court opinion sets forth the relevant facts of this appeal as follows:

> On June 24, 2009, Annette West [("Victim")] was walking home from a Chinese food store at approximately 3:00 a.m. when Appellant grabbed her from behind, punched her and told her he was going to "fuck her really good" while ripping her shirt and scratching her neck.  [Victim's]

───────────────────────────────

[1] 18 Pa.C.S.A. §§ 901; 901; 3502; 3503; 2903; 2701 respectively.

───────────────────────────────

*Retired Senior Judge assigned to the Superior Court.

neighbor, Kristal Bellinger, heard [Victim] screaming outside her home and came to her front door to see if [Victim] was [all right]. In response, Appellant took [Victim] by the arm and told her "you better say you're having an asthma attack." [Victim] complied.

As Appellant began to walk [Victim] up Bellinger's steps, Bellinger went back inside and shut the door. Appellant then kicked in Bellinger's door and entered her home. Appellant and Bellinger started to fight, at which point Bellinger's sister, Sandra, came downstairs, grabbed a bike and told Appellant to leave. Following that altercation, Appellant walked out the front door. Meanwhile, [Victim], who had broken away from Appellant, ran to her home and told her brother, Westfield, to call the police.[2]

Police Officers Zagursky and Wright were on duty that night when they responded to two radio calls about a rape in progress at 60th and Catharine Streets. The officers were driving southbound on 60th Street when they approached several people flagging them down between Catharine and Webster Streets. They next encountered [Victim], who looked disheveled and was crying that a man had just attempted to rape her.

The officers also spoke with Westfield West, who told them that the attacker was a black male with a short, stocky build, dark complexion and no shirt. He told the officers the perpetrator had gone towards the 5900 block of Webster Street. Zagursky saw Appellant on that block, which was illuminated by street lights, ducking in and out of the sidewalk and yelling gibberish. As Wright approached Appellant, he saw him run onto a porch, where he was subsequently arrested. Wright testified that he had seen Appellant earlier that night because he remembered he did not have a shirt on.

[Victim] met with Detectives Taylor and Organ in the

---

[2] This 911 call forms the basis for Appellant's first issue. During this call, Westfield West told the operator that his sister was crying and upset, and that he could see "the man" who had "no shirt."

Special Victims Unit that night. She had fresh scratches and her gray sweatshirt was ripped. Because there was no penetration and there were no bodily fluids exchanged between Appellant and [Victim], a DNA test on her sweatshirt was not warranted.

Kristal Bellinger testified she had only a brief opportunity to see Appellant's face in her home and that Appellant did "not look like the man." However, Appellant was identified by both [Victim] and Sandra Bellinger at the scene and at trial. While [Victim] testified that she could not remember if Appellant had a shirt on, she could remember his face and his muscles. She further testified she had no doubt that Appellant was the man who attacked her.

Dr. Barbara Ziv testified at a Megan's Law hearing that Appellant is a sexually violent predator [("SVP")].[1] She reached this conclusion because of his mental abnormalities and his [recidivism] risk. Appellant's mental abnormalities include antisocial orientation, antisocial personality disorder, and impulsivity. She further stated that Appellant's pattern of bad behavior as a result of his mental abnormalities has been consistent from the age of ten, when he attempted to burn his stepfather, to the present. Appellant's history of misconduct includes indecent exposure in prison as well as prostitution.

   [1] Dr. Ziv explained that she did not interview Appellant because people undergoing these types of assessments often lie.

Dr. Ziv testified that Appellant is likely to reoffend. While she could not assign a specific percentage number to his recidivism risk, she believed he would probably recidivate because of his antisocial traits and the fact that he had victimized a stranger. She also stated that while his previous sexual behaviors only made this link stronger, the combination of antisocial traits and a stranger victim would still have fulfilled the requirements under the statute for [an SVP] even absent the previous sexual activity.

(Trial Court Opinion, filed October 28, 2013, at 1-2).

A jury convicted Appellant on December 12, 2012. On April 8, 2013,

the court sentenced Appellant to twenty-seven (27) to fifty-four (54) years' incarceration and bifurcated the SVP portion of the hearing.[3]  On April 12, 2013, the court found Appellant qualified for SVP status.  Appellant timely filed a motion for modification of sentence and/or arrest of judgment on April 22, 2013, which the court denied.  Appellant timely filed a notice of appeal on May 21, 2013.  On May 31, 2013, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), which Appellant filed on June 21, 2013.

Appellant raises the following issues for our review:

> DID THE TRIAL COURT ERR OR ABUSE ITS DISCRETION IN ADMITTING THE 911 RECORDING OF THE NON-TESTIFYING DECLARANT WHERE AN OTHERWISE AVAILABLE DECLARANT FAILED TO APPEAR AND THE ATTORNEY FOR THE COMMONWEALTH PLAYED THE 911 RECORDING OVER THE OBJECTION OF ATTORNEY FOR [APPELLANT] DENYING APPELLANT THE RIGHT TO CONFRONTATION[?]
>
> WAS THE JURY'S VERDICT OF GUILT AGAINST THE WEIGHT OF THE EVIDENCE WHERE ASSIGNED POLICE OFFICERS CONTRADICTED EACH OTHER'S TESTIMONY

---

[3] The statutory language of 42 Pa.C.S.A. § 9795.4(a) indicates the SVP assessment is to be conducted after conviction but before sentencing. ***Commonwealth v. Whanger***, 30 A.3d 1212 (Pa.Super. 2011).  In ***Whanger***, this Court determined a defendant can waive this statutory requirement.  Additionally, our Supreme Court held 42 Pa.C.S.A. § 9795.4(a) was unconstitutional, in ***Commonwealth v. Neiman***, \_\_\_\_ Pa. \_\_\_\_, 84 A.3d 603 (2013).  Here, Appellant consented to the bifurcation of the sentencing and SVP hearings, which the court permitted at the sentencing hearing on April 8, 2013.  Further, Appellant was advised of his post-sentencing rights at the conclusion of the SVP hearing, such that his post sentence motions were timely filed.

REGARDING APPELLANT'S ARREST, A COMPLAINANT STATED DEFINITELY THAT APPELLANT WAS NOT THE PERPETRATOR OF THE ALLEGED CRIME AND POLICE FAILED TO ANALYZE DNA EVIDENCE ON THE SHIRT OF THE COMPLAINANT FOLLOWING AN ALLEGED PHYSICAL AND SEXUAL ASSAULT?

WAS THE TRIAL COURT'S DETERMINATION OF APPELLANT'S SEXUALLY VIOLENT PREDATOR DESIGNATION IN ERROR WHERE THE COMMONWEALTH FAILED TO MEET ITS BURDEN OF "CLEAR AND CONVINCING EVIDENCE" THAT APPELLANT IS A SEXUALLY VIOLENT PREDATOR?

(Appellant's Brief at 7-8).

In his first issue, Appellant argues the 911 radio call of Westfield West, a declarant who did not testify at trial, was offered for the truth of the matter asserted. Appellant contends the statement did not qualify as an exception to the rule against hearsay. Further, Appellant claims the admission of the radio call as evidence denied Appellant his Sixth Amendment right to confrontation. Appellant submits the radio call elicited a statement in favor of the Commonwealth's case that was a deciding factor for the jury in its determination of Appellant's guilt. Appellant concludes the admission of this hearsay was an error of law and Appellant is entitled to a new trial. We disagree.

The standard of review for admission of evidence is as follows:

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends

- 5 -

to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

***Commonwealth v. Drumheller**,* 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *certiorari denied,* 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003). **See also *Commonwealth v. Lewis**,* 885 A.2d 51, 54 (Pa.Super. 2005).

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Hunt**,* 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied,* 583 Pa. 659, 875 A.2d 1073 (2005) (internal citations and quotation marks omitted).

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

**Rule 801. Definitions**

**(a) Statement.** A "statement" is

(1) an oral or written assertion or

(2) nonverbal conduct of a person, if it is intended by the person as an assertion.

**(b) Declarant.** A "declarant" is a person who makes a statement.

**(c) Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Pa.R.E. 801.[4]  Pennsylvania Rule of Evidence 803 provides exceptions to the hearsay rule and states, in pertinent part:

**Rule 803.  Hearsay exceptions; availability of declarant immaterial**

The following statements, …, are not excluded by the hearsay rule, even though the declarant is available as a witness:

**(1)  Present sense impression.**  A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

**(2)  Excited utterance.**  A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**(3) Then existing mental, emotional, or physical condition.**  A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health.  A statement of memory or belief offered to prove the fact remembered or believed is included in this exception only if it relates to the execution, revocation, identification, or terms of declarant's will.

Pa.R.E. 803.[5]  *See Commonwealth v. Gray*, 867 A.2d 560 (Pa.Super. 2005), *appeal denied,* 583 Pa. 694, 879

---

[4] Rule 801 was recently rescinded and replaced by a revised version, effective March 18, 2013.  The relevant language in the new rule is substantially the same as in the former rule.

[5] Rule 803 was also rescinded and replaced by a revised version, effective March 18, 2013.  The relevant language in the new rule is substantially the same as in the former rule.

A.2d 781 (2005) (applying "present sense impression" exception to hearsay rule only if declarant had no opportunity to form purpose of misstating observation). *See Commonwealth v. Hood*, 872 A.2d 175, 181 (Pa.Super. 2005), *appeal denied,* 585 Pa. 695, 889 A.2d 88 (2005) (stating "excited utterance" exception to hearsay rule admits statements made while declarant was under stress of excitement caused by event or condition related to startling event); *Commonwealth v. Carmody*, 799 A.2d 143 (Pa.Super. 2002) (describing excited utterance as "a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its being emanated in whole or in part from his reflective faculties").

*Commonwealth v. Levanduski*, 907 A.2d 3, 13-15 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 711, 919 A.2d 955 (2007).

Statements not excluded by the hearsay rule remain inadmissible as evidence if the statements violate the Sixth Amendment to the United States Constitution. *See Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163 (2012). We observe:

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const., amend. VI. This constitutional protection is known as the Confrontation Clause. In 1980, the United States Supreme Court, in *Ohio v. Roberts*, 448 U.S. 56 [100 S.Ct. 2531, 65 L.Ed.2d 597] (1980) held that the Confrontation Clause did not bar admission of an unavailable witness's statement against a criminal defendant, provided the statement was surrounded by "adequate indicia of reliability." 448 U.S. at 66, 100 S.Ct. 2531. Such indicia existed when the testimony being

considered either fit within a "firmly rooted hearsay exception," or contained "particularized guarantees of trustworthiness." *Id.*

\* \* \*

[The Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)] held the Confrontation Clause prohibits out-of-court *testimonial* statements by a witness, regardless of whether the statements are deemed reliable by the trial court, unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. *Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. Id.* (emphasis added).

The *Crawford* Court expressly declined, however, to explain the distinction between testimonial and nontestimonial statements, stating "[w]e leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* (footnote omitted).

Two years after the Supreme Court's *Crawford* decision, the Court had the opportunity to clarify the difference between testimonial and nontestimonial hearsay in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). At issue in the consolidated appeal in *Davis* were two separate statements. The first was a statement made by a victim of spousal abuse to a 911 operator; the second was a wife's statement to police officers dispatched to investigate a domestic disturbance, set forth in a battery complaint. In finding the statement

to the 911 operator nontestimonial, but the wife's statement to the police officers testimonial, the ***Davis*** Court set forth the following test for determining whether statements are testimonial or nontestimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. ***Id.*** at 822, 126 S.Ct. at 2266.

***Allshouse, supra*** at 241-44, 36 A.3d at 170-72.

Instantly, Westfield West's statement to the 911 operator was an out-of-court statement offered for the truth of the matter asserted. The statement, however, described events and conditions while Mr. West perceived them. Specifically, Mr. West made the statements to the 911 Operator to assist in an ongoing emergency involving an attack on his sister. Thus, the 911 tape fell under the present sense impression exception to the rule against hearsay and was admissible as a non-testimonial statement under ***Crawford***.

In his second issue, Appellant argues the Commonwealth's key witnesses' testimony at trial was full of discrepancies and inconstancies which raised substantial questions regarding Appellant's guilt. Appellant contends the failure of the detectives to conduct DNA tests on the victim's clothing did not support the jury's finding that Appellant was guilty beyond a

reasonable doubt. Appellant submits the verdict was against the weight of the evidence. Appellant concludes the court erred when it denied relief on this claim, and Appellant is entitled to a new trial. We disagree.

We observe:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672–73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011), *appeal denied*, 615 Pa. 783, 42 A.3d 1059 (2012).

Instantly, the Commonwealth presented testimony from Victim, witnesses, police officers, and detectives. The jury had the opportunity to assess the credibility of the witnesses and consider all the evidence presented. Specifically, the jury was presented with the testimony of two witnesses who identified Appellant as the perpetrator of the crimes. Further, the jury heard the detectives testify why they saw no reason to conduct DNA testing on Victim's shirt. Given the evidence at trial, we see no reason to

disturb the court's decision to deny relief on Appellant's weight claim. **See Devine, supra**.

In his third issue, Appellant argues Dr. Ziv's testimony did not provide sufficient evidence that Appellant is an SVP. Appellant avers his offense did not involve multiple victims, unnecessary means, or unusual cruelty. Appellant contends he had no prior convictions for sexual offenses, and Victim's age did not demonstrate pedophilia. Appellant submits the Commonwealth's evidence was legally insufficient to show Appellant is an SVP. Appellant concludes he is entitled to revocation of his status as an SVP. We disagree.

In **Commonwealth v. Prendes**, 97 A.3d 337 (Pa.Super. 2014), this Court observed:

> "To deem an individual [an SVP], the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14]….'" **Commonwealth v. Askew**, 907 A.2d 624, 629 (Pa.Super. 2006), *appeal denied,* 591 Pa. 709, 919 A.2d 954 (2007). **See also** 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.'" **Askew, supra**. When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP. **Commonwealth v. Kopicz**, 840 A.2d 342, 351 (Pa.Super. 2003).
>
> An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. **Commonwealth v. Howe**, 842 A.2d 436, 445–46 (Pa.Super. 2004). SVP status, therefore, does not require proof beyond a reasonable doubt; the court

decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP. ***Commonwealth v. Killinger***, 585 Pa. 92, 104, 888 A.2d 592, 600 (2005).

Rule 702 of the Pennsylvania Rules of Evidence provides:

**Rule 702.  Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c)  the expert's methodology is generally accepted in the relevant field.

*Comment:*

Pa.R.E. 702 states that an expert may testify in the form of an "opinion or otherwise."  Much of the literature assumes that experts testify only in the form of an opinion.  The language "or otherwise" reflects the fact that experts frequently are called upon to educate the trier of fact about the scientific or technical principles relevant to the case.

Pa.R.E. 702.  "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Pa.R.E. 703; ***In re D.Y.,*** 34 A.3d 177, 182–83 (Pa.Super. 2011), *appeal denied,* 616 Pa. 638, 47 A.3d 848 (2012).  "If the expert states an opinion the expert must state the facts or data

on which the opinion is based." Pa.R.E. 705 and *Comment* (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence). "Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." **In re D.Y., supra** at 183. Opposing counsel bears the burden of exposing and exploring "any weaknesses in the underpinnings of the expert's opinion." **Id.**

"With regard to the various assessment factors…, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation." **Commonwealth v. Brooks***, 7 A.3d 852, 863 (Pa.Super. 2010), *appeal denied*, 610 Pa. 614, 21 A.3d 1189 (2011). Thus, "[t]he Commonwealth does not have to show that any certain factor is present or absent in a particular case." **Id.** Moreover, "the absence of an interview does not preclude the ability to evaluate the offender's behavior through available history for characteristics similar or dissimilar to the criteria set forth in the law for defining a sexually violent predator." **Commonwealth v. Woods***, 909 A.2d 372, 381 (Pa.Super. 2006), *appeal denied,* 591 Pa. 714, 919 A.2d 957 (2007). Likewise, "to carry its burden of proving that an offender is an SVP, the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist…" **Commonwealth v. Conklin***, 587 Pa. 140, 158, 897 A.2d 1168, 1178 (2006). Additionally, the statute requires all state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB [Sexual Offenders Assessment Board] in connection with an SVP assessment. 42 Pa.C.S.A. § 9799.24(c). Importantly, the primary purpose of the registration requirements is to help ensure the safety of the public, not to punish the offender. **Commonwealth v. Carter***, 821 A.2d 601, 606 (Pa.Super. 2003) (holding SOAB expert can review confidential

psychiatric examinations performed when defendant was juvenile to make SVP assessment).

***Prendes, supra*** at 358-59.

Instantly, Appellant stipulated Dr. Barbara Ziv, a Board certified psychiatrist working with the SOAB, was qualified to do the SVP evaluation. Dr. Ziv testified that Appellant's antisocial traits in combination with his victimization of a stranger are associated with recidivism. Utilizing the statutory factors, Dr. Ziv assessed Appellant and determined he exhibited behaviors, characteristics, and a personality disorder, which made him likely to reoffend. Dr. Ziv opined Appellant qualified as an SVP. After hearing the testimony of a qualified expert, who stated the grounds for her opinions, the court resolved Appellant's SVP status. We see no reason to disturb this decision. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014

- 15 -