**In the Interest of D.Y.**

**Appeal of D.Y.**

Superior Court of Pennsylvania.

Argued Oct. 12, 2011.
Filed Dec. 13, 2011.

Karl Baker, Public Defender and Mark P. Cichowicz, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Grady J. Gervino, Assistant District Attorney, Philadelphia, for Commonwealth, participating party.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., MUSMANNO, BENDER, GANTMAN, PANELLA, ALLEN, LAZARUS, and MUNDY, JJ.

OPINION BY ALLEN, J.:

D.Y. ("Appellant") appeals from the dispositional order entered after he was adjudicated delinquent on charges of burglary, criminal trespass, theft by unlawful taking, receiving stolen property and criminal mischief.[1] We affirm.

On April 1, 2009, an adjudicatory hearing convened, during which Appellant and the Commonwealth stipulated to the following facts. Between 6:00 and 7:00 p.m. on October 10, 2008, Rasheedah Francis

returned to the home she shared with her husband and daughter at 1520 North 60th Street in Philadelphia. When Ms. Francis arrived, she found her front door wide open, her back door damaged, and a back window open. The house had been ransacked, and jewelry, electronics and cash totaling $14,000 had been stolen.

The Commonwealth thereafter presented the only two witnesses to testify at the hearing: Philadelphia Police Detective Roseanna Filippello, and Fingerprint Technician Clifford Parson.

Detective Filippello testified to being called to Ms. Francis' home on the evening of October 10, 2008, and lifting fingerprints from the glass pane of the open back window. N.T., 4/1/09, at 9–12. Detective Filippello sent the lifted fingerprints to the latent print section of the Philadelphia Police Department to be compared with fingerprints kept on record. *Id.* at 14–15.

Fingerprint Technician Clifford Parson testified to working in the Philadelphia Police Department for fifteen years, where he analyzed and observed crime scene prints. *Id.* at 17. Technician Parson explained that in this case, he received the fingerprints collected by Detective Filippello, and entered them in the automatic fingerprint identification system, where the prints came back as a positive match for a "ten print card."[2] *Id.* at 21–22. Technician Parson averred that "the unique characteristics matched. That's where you get a positive identification . . . what I saw is that the unique characteristics from the latent print matched the known print of [Appellant]." *Id.* at 24–25.

1. 18 Pa.C.S.A. §§ 3502, 3503, 3921, 3925, and 3304.

2. A ten print card is a record of an individual's ten fingerprinted fingers, which the Philadelphia Police Department creates and retains whenever someone is arrested in Philadelphia. N.T., 4/1/09, at 21–22.

At the conclusion of the April 1, 2009 hearing, the juvenile court adjudicated Appellant delinquent on all charges and entered a disposition continuing Appellant's placement at a juvenile facility. Appellant filed a timely notice of appeal on April 17, 2009.

On December 3, 2010, a three-judge panel of this Court filed an opinion in which the majority reversed Appellant's adjudication. The Commonwealth filed an application for reargument *en banc*. By *per curiam* order on February 1, 2011, this Court granted the Commonwealth's application for reargument, withdrew its December 3, 2010 decision, directed the case to be listed before an *en banc* panel, and instructed the parties to refile the briefs previously filed, together with supplemental briefs, or prepare and file substituted briefs. Both parties filed substituted briefs.

Appellant disputes the admissibility of the evidence presented by the Commonwealth through the testimony of the fingerprint technician. Appellant asserts that the juvenile court improperly admitted Technician Parson's hearsay testimony. Appellant expressly presents the following issue:

> Did not the [juvenile] court err in admitting at [Appellant's] adjudicatory hearing, under the rubric of "expert testimony," hearsay information establishing [Appellant's] identity (to wit, that the fingerprints on a "10 print card," which matched latent prints taken from the scene of the crime, were [Appellant's] fingerprints), where that hearsay information was *not necessary to the expert's testimony*, where the expert's testimony was used to bypass the otherwise *applicable rules of evidence* and where the expert merely functioned as a

conduit for the otherwise inadmissible hearsay?

Appellant's Substituted Brief at 3.

Similarly, the Commonwealth frames the issue:

> Did the juvenile court act within its discretion in permitting a fingerprint examiner to offer his expert opinion that a fingerprint lifted from a window of the burglarized property was [Appellant's]?

Commonwealth Substituted Reply Brief at 1.

■ At the outset, we note that the admission of the fingerprint technician's hearsay testimony is the sole issue before us. We agree with the Commonwealth that "the questions of whether the fingerprint examiner's testimony was sufficient to prove [Appellant's] identity as the burglar beyond a reasonable doubt and whether [Appellant's] constitutional rights would be somehow violated by a finding that the burden of proof was met in this case are not before this Court." Commonwealth Substituted Reply Brief at 1. Citing *Commonwealth v. Rolan*, 964 A.2d 398, 409 (Pa.Super.2008) and *Commonwealth v. Constant*, 925 A.2d 810, 824 (Pa.Super.2007), the Commonwealth accurately notes that these issues were not raised in Appellant's original or supplemental Pa. R.A.P. 1925(b) statements, nor were they developed by Appellant in his briefs. *Id.* We further note that when the Commonwealth rested its case, Appellant did not make a motion for dismissal. Nor did Appellant file an optional post-dispositional motion as provided for in Pa.R.J.C.P. 520(A)((1) "The parties shall have the right to make a post-dispositional motion. All requests for relief from the court shall be stated with specificity and particularity, and shall be consolidated in the post-dispositional motion." (2) Issues raised before or during the adjudicatory hearing shall be deemed preserved for appeal whether or

not the party elects to file a post-dispositional motion on those issues."). Accordingly, the juvenile court in its Pa.R.A.P. 1925(a) opinion did not address the issues of whether the fingerprint expert's testimony was sufficient to sustain Appellant's adjudication, or whether Appellant's constitutional rights had somehow been violated. Those issues are not properly before us.

■ Although Appellant has waived any challenge to the sufficiency of the evidence, we direct Appellant to *Commonwealth v. Meals*, 590 Pa. 110, 912 A.2d 213 (2006), in which our Supreme Court affirmed the trial court's reliance on expert testimony to determine that the defendant was a sexually violent predator. Our Supreme Court in *Meals* found the defendant's sufficiency challenge to be meritless, and in its analysis opined that defendant's sufficiency claim was truly a weight claim. The Pennsylvania Supreme Court reasoned:

> To the extent [defendant] felt that the expert's 'diagnosis' was not fully explained, did not square with accepted analyses of this disorder, or was simply erroneous, [defendant] certainly was free to introduce evidence to that effect and/or to argue to the factfinder that the Commonwealth's expert's conclusions should be discounted or ignored. But that argument would affect the weight, and not the sufficiency of the evidence.

*Meals* at 223–224 (citation and footnote omitted).

Similarly, Appellant in this case could have introduced evidence to contradict the fingerprint expert's evidence presented by the Commonwealth. He did not. In fact, Appellant did not avail himself of the opportunity to present any evidence on behalf of his defense. It is well-settled that "the trier of fact, while passing on the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *See In re J.M.*, 5 A.3d 323, 330 (Pa.Super.2010) (citation omitted). We have explained:

> For this Court to reverse the jury's verdict on weight of the evidence grounds, we must determine that the verdict is so contrary to the evidence as to 'shock one's sense of justice.' Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Brown*, 23 A.3d 544, 557 (Pa.Super.2011) (citations omitted). Clearly the juvenile court in this case acted within its discretion in crediting the expert testimony of Fingerprint Technician Parson. We therefore proceed to address the admission of the fingerprint technician's testimony.

Our careful review of both the record and applicable law indicates that the juvenile court properly admitted the fingerprint technician's testimony. The Commonwealth qualified Mr. Parson, a fingerprint technician, as an expert in analyzing crime scene fingerprints. N.T., 4/1/09, at 19. Technician Parson worked for as a fingerprint expert with the Philadelphia Police Department for fifteen years, and during that time received spe-

cialized training from the Philadelphia Police, the Pennsylvania Police and the FBI. *Id.* at 18–19. Technician Parson testified that his job was to "analyze and observe crime scene prints." *Id.* at 18.

■ In this particular case, Technician Parson compared latent fingerprints taken from the scene of the burglary at Ms. Francis' home with a "ten print card" on file with the Philadelphia Police Department, and determined that the fingerprints taken from Ms. Francis' home belonged to Appellant. The only issue is whether the trial court abused its discretion in permitting Technician Parson to testify to an alleged hearsay statement—*i.e.* that Appellant's name and fingerprints were on the ten print card. We find that because Technician Parson was an expert and relied upon the hearsay statement to form his opinion, he was properly permitted to testify to the hearsay statement under Pa. R.E. 703 and 705.

The governing authority in this case is Pa.R.E. 703 and Pa.R.E. 705.

In its entirety, Pa.R.E. 703 states:

**Rule 703. Bases of opinion testimony by experts**

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*Id.*

"In Pennsylvania ... Pa.R.E. 705 requires an expert witness to testify as to the facts or data upon which the witness's opinion is based, whether or not the facts or data would otherwise be admissible in evidence." *Id., Comment; see* Pa.R.E. 705

("[T]he expert must testify as to the facts or data on which the opinion or inference is based."). "When an expert testifies about the underlying facts and data that support the expert's opinion and the evidence [is] inadmissible, the trial judge, upon request, shall ... instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence." Pa.R.E. 705, *Comment.*

With regard to Pa.R.E. 703, this Court has stated:

It is well-established that an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is of a type customarily relied on by experts in his or her profession. *Collins v. Cooper,* 746 A.2d 615, 618 (Pa.Super.2000); *Primavera v. Celotex Corp.* [415 Pa.Super. 41], 608 A.2d 515 (Pa.Super.1992). Such material may be disclosed at trial even though it might otherwise be hearsay ... Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: "The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes." *Primavera,* 608 A.2d at 520.

*Boucher v. Pa. Hosp.,* 831 A.2d 623, 628 (Pa.Super.2003). *See Maravich v. Aetna Life & Casualty Co.,* 350 Pa.Super. 392, 504 A.2d 896, 900–01 (1986) (permitting expert to testify to hearsay statements when those statements were reasonably relied upon by the expert in forming his opinion); *Id.* at 900 (quoting McCormick on Evidence § 324.2 (3d ed.1984) ("An expert witness may ... base an opinion on facts or data that are not 'admissible in

evidence' if of a type reasonably relied upon by experts in the field.... [T]he basis facts may be testified to by the expert, and accordingly they are in evidence. The effect of [this rule] has been to create a hearsay exception, or perhaps dispense with the requirement of first-hand knowledge, as the case may be.")).

Here, Technician Parson compared the ten print card to the latent fingerprints, and thus, the ten print card was perceived by Technician Parson first-hand. *See* Pa. R.E. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by ... the expert at or before the hearing."). There was no dispute that fingerprint experts such as Technician Parson reasonably rely on ten print cards to establish the identity of the person whose fingerprints were left at the scene of a crime. Accordingly, under Pa.R.E. 703 and 705, Technician Parson was permitted to testify that Appellant's name and fingerprints were on the ten print card, even though this testimony may have been hearsay. *See Boucher,* 831 A.2d at 628 ("Such material may be disclosed at trial even though it might otherwise be hearsay.... [H]earsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness[.]"); *Maravich,* 504 A.2d at 900–01.

■ "Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *Ratliff v. Schiber Truck Co.,* 150 F.3d 949, 955 (8th Cir.1998) (citation omitted). "It is thus the burden of opposing counsel to explore and expose any weaknesses in the underpinnings of the expert's opinion." *Id.* (citations omitted).

In this case, Appellant had the opportunity to impeach Technician Parson on cross-examination. In addition, Appellant could have challenged the evidence upon which Technician Parson relied for purposes of his expert opinion, *i.e.,* that the fingerprints on the ten print card belonged to Appellant. After identifying Appellant as a match from the Automated Fingerprint Identification System ("AFIS") to the latent fingerprints lifted from the open back window of Ms. Francis' burglarized home, Technician Parson was cross-examined as follows:

COUNSEL: Mr. Parson, what's a false positive?

A: When a technician makes a mistake and says it's one person and it's not.

COUNSEL: Is it fair to say that false positive is actually when the technician, based on the information available to them, based on the prints available, would incorrectly identify because they have incomplete information?

A: No. It was just the technician's mistake identifying or wrong—

COUNSEL: How would that mistake be made?

A: It would depend on the technician's mistake.

COUNSEL: You're saying there's no standard technical explanation, based on the fingerprints?

A: You might identify two prints as coming from the same source when, in fact, they did not.

COURT: Of course, there could be a mistake. There's no question about it. These are things we deal with all the time. There can be questions raised about the prints being evaluated by the investigators and the Police Department. It happens in all areas of science.

I understand you're being upset, and I understand your objection, but Mr. Parson has testified that when he looked at it, to him it was a positive match. You know, whether he's perfect or not, I don't know. I looked at it. I don't know enough to know if what it says is right or not. I've looked at it. They appear to be the same to me. I'm hardly an expert in the field. Yet, someone can make a mistake.

Mr. Parson, do you feel that you erred in this evaluation?

A: No.

COURT: And if you knew that you erred in this evaluation, what would you have done?

A: I wouldn't have—

COURT: Would you have brought that to someone's attention, if you thought you had erred? In other words, would you say that it's true if it's not?

A: No.

COURT: I'm just asking if you evaluated it, looked at it and thought it was a match, and looked at it again today and thought it was not a match, would you have kept silent or would you have told the lawyer?

A: I would have told the lawyer, yes.

\*　\*　\*

COUNSEL: Mr. Parson, you testified based on the print-out that I'm showing you regarding AFIS that a match was made on it.

A: AFIS just gives you candidates. They place them side by side.

COUNSEL: Which print specifically was compared to the AFIS system?

A: The ten print card when it was rolled.

COUNSEL: A latent print was recovered, right?

A: Yes.

COUNSEL: A latent print was plugged into AFIS to see if this suspect matched?

A: Correct.

COUNSEL: Which print was used to put into AFIS for this purpose?

A: They entered the ten print in front of the latent print. Which one was used?

COUNSEL: Yes.

A: Life No. 9.

COUNSEL: And you're saying it was compared in the AFIS system. Now, the AFIS system is a database compiled by the Federal Bureau of Investigation?

A: Two different databases. It's the FBI's database and the City's database, which is ours. It's a state database, which is the whole state of Pennsylvania.

COUNSEL: And it would be fair to say that information is put into that database from all of those sources?

A: Yes.

COUNSEL: Okay. And you don't have any specific knowledge regarding the print in this case and what source it came from?

A: I know what source it came from.

COUNSEL: What is that based on?

A: He was fingerprinted at a District.

COUNSEL: And the reason you know this is because the computer system and the AFIS system is telling you that?

A: Our system only gets information from the City of Philadelphia.

COUNSEL: You weren't present when he was fingerprinted?

A: No.

\*　\*　\*

COUNSEL: How did you know that those fingerprints belonged to [Appellant]?

A: All I use is the number that comes up on the AFIS system; put the card and whatever the name is in our computer system, and it comes up under that photo number. Then that's the name I use.

N.T., 4/1/09, at 27–31, 35.

In considering Appellant's appeal, the juvenile court commented:

If the [fingerprint] challenge is to hearsay, the issue is without merit ... This court permitted extensive cross-examination of the expert witness. Indeed, the expert witness admitted that mistakes could be made resulting in misidentification. This court limited the defense attorney's persistent questioning belaboring this same point. Furthermore, this court took judicial notice that mistakes could be made.

Trial Court Opinion, 7/13/09, at 2.

Appellant references a chain-of-custody case, *Commonwealth v. Pedano*, 266 Pa.Super. 461, 405 A.2d 525 (1979), as authority for his position. Appellant's Substituted Brief at 21–22. *Pedano* is readily distinguishable because it is a chain-of-custody case which addresses the admissibility of demonstrative evidence, namely a fingerprint roll card. Here, the Commonwealth never sought to introduce the ten print card into evidence, and thus, *Pedano* is inapplicable. Indeed, *Pedano* does not discuss, let alone address, the sole issue in this case—whether an expert may disclose hearsay testimony when that testimony formed a basis for the expert's opinion.

■ Although chain-of-custody and hearsay are both evidentiary principles, they are entirely distinct. Chain-of-custody refers to the manner in which evidence was maintained from the time it was collected to its submission at trial, *see Commonwealth v. Alarie*, 378 Pa.Super. 11, 547 A.2d 1252 (1988), while hearsay is an out-of-court statement offered at trial or hearing to prove the truth of the matter asserted, *see Commonwealth v. Bujanowski*, 418 Pa.Super. 163, 613 A.2d 1227 (1992). Again, the issue in this case is hearsay; Appellant never raised a chain-of-custody issue. Appellant did not challenge chain-of-custody at the adjudicatory hearing, nor by post-disposition motion, nor in his Pa. R.A.P. 1925(b) statements. Any challenge to chain-of-custody by Appellant has therefore been waived.

Given the foregoing, we conclude that the juvenile court did not abuse its discretion in admitting Technician Parson's expert testimony over Appellant's hearsay objections. We discern no error by the juvenile court and therefore affirm the juvenile court's adjudication and entry of dispositional order.

Order affirmed.

Judge LAZARUS files a Dissenting Opinion.

## DISSENTING OPINION BY LAZARUS, J.:

I respectfully dissent. The majority emphasizes that D.Y.'s issue on appeal is solely whether the trial court erred in admitting the hearsay testimony of a fingerprint technician at the adjudicatory hearing. The Commonwealth similarly frames the issue as one of hearsay and deems any other issue waived on appeal. While hearsay was, no doubt, one of the objections lodged by counsel at D.Y.'s adjudicatory hearing, counsel also objected on the basis that the *source* of the ten print card linking D.Y. to the latent fingerprints at the burglary scene was not presented at trial. N.T. Adjudicatory Hearing, 4/1/2009, at 22. In fact, the fin-

gerprint technician admitted at D.Y.'s hearing that "[y]ou might identify two prints as coming from the same *source*, when, in fact, they did not." *Id.* (emphasis added).

Here, I believe that D.Y. has properly preserved the issue regarding whether the Commonwealth established that the fingerprints on the ten print card were, in fact, his fingerprints. By challenging the Commonwealth's failure to establish the source of the ten print card, D.Y. has made a veiled chain-of-custody argument. However, as veiled as it may be, I believe that D.Y.'s challenge to admitting the evidence regarding the ten print card is still preserved for our review.

In my opinion, the Commonwealth's failure to either call the officer who rolled the fingers of the individual onto the ten print card or offer the ten print card with D.Y.'s purported signature as evidence at the hearing is fatal to its case. Without a foundation or source of the prints on the card, there is a fatal gap in the evidence linking D.Y. to the charged offenses.

In *Commonwealth v. Pedano*, 266 Pa.Super. 461, 405 A.2d 525 (1979), defense counsel objected to the lack of a foundation with regard to how an officer (expert officer), who was also a fingerprint expert witness like Technician Parson, was able to identify a fingerprint "roll"[1] card with the defendant. *Id.* at 527. Specifically, five months prior to the offense at issue in *Pedano*, the defendant had been fingerprinted by another detective, resulting in a "rolled impression card" which contained the defendant's fingerprints and signature. *Id.* at 528. Although the detective testified at trial to taking the defendant's fingerprints on that card, because the Commonwealth failed to link that card with the fingerprint card used by the expert officer

to match defendant to the latent fingerprints at the crime scene, the trial court reversed the judgment of sentence and discharged the defendant. *Id.* In coming to its decision, the trial judge in *Pedano* acknowledged this lack of a foundation or source linking the card's fingerprints with the defendant, stating:

> I will not permit [the officer] to continue without testimony on the record of **how he knows that these are the known fingerprints of Stephen Pedano.** That is the point I started to say earlier before we started this case. There has to be testimony, **not hearsay—**

*Id.* (emphasis added).

To me, this case is on all fours with *Pedano* and should be controlled by its holding. In fact, I believe that the link between the fingerprint evidence in this case is even more tenuous than that in *Pedano* because, here, not only was the ten print card not admitted into evidence or presented at the adjudicatory hearing, but the officer who conducted the fingerprinting for the ten print card did not testify at D.Y.'s hearing.

Finally, the fact that D.Y.'s counsel objected to the admission of the fingerprint evidence on the basis of hearsay does not compel a different result on appeal. Even the trial judge in *Pedano* noted that the expert officer's testimony that relied upon the roll card to match those fingerprints to the latent fingerprints of the defendant would be classified as hearsay if no proper foundation existed to establish that that card was the same fingerprint roll card taken of the defendant five months earlier. Like *Pedano*, the Commonwealth's sole evidence linking D.Y. to the instant offense was fingerprint testimony, the source of the ten print card is critical. Without having either the officer who rolled the

1. A fingerprint roll card is the equivalent to the "ten print card" in the instant case.

individual's fingers for the ten print card or the ten print card itself with D.Y.'s signature affixed to it admitted into evidence, the Commonwealth did not establish a connection between D.Y. and the latent fingerprints lifted at the burglary scene.

Accordingly, I would reverse D.Y.'s adjudication and remand for a new adjudicatory hearing in the juvenile court.