J-S67036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WALLACE HOLLEY, | |
| Appellant | No. 616 MDA 2015 |

Appeal from the Judgment of Sentence December 18, 2012
in the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-CR-0001261-2012

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED DECEMBER 29, 2015**

Appellant, Wallace Holley, appeals from the judgment of sentence imposed on December 18, 2012 following his conviction by a jury of unlawful possession of cocaine and possession with intent to deliver cocaine.[1]  On appeal, he challenges the trial court's admission of expert testimony that Appellant was involved in drug trafficking rather than possession for personal use based in part on text messages from Appellant's cell phone. We affirm.

The relevant factual and procedural history is as follows.  On September 4, 2011, Trooper Clint Long pulled over a Mitsubishi Eclipse that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16) and § 780-113(a)(30) respectively.

was driving down Interstate 81 in the southbound left lane traveling five miles an hour below the posted speed limit.

Upon request, Ms. Cherry Carter, the driver, handed Trooper Long the registration and insurance information that she obtained from the glove box. When Trooper Long checked these documents, they came back to a Ford F150 pick-up truck. When Trooper Long ran the information for the Mitsubishi Eclipse, it came back registered to a Mr. David Selig from Hagerstown, Maryland, who was not in the vehicle at the time.

Neither Ms. Carter nor Appellant, the passenger, could produce a driver's license; however, both provided Trooper Long with their names and information. After he did not come up with any information when he ran their names through his in car computer system, Trooper Long called for backup.

Soon thereafter, Corporal Douglas Howell arrived on scene and spoke with Appellant and Ms. Carter separately to ascertain whether their descriptions of their activities were consistent. Corporal Howell noticed several differences between their stories regarding both the timeframe of their travels and their destinations. He also noticed that while talking with Ms. Carter, she appeared very nervous.

Because neither of their identifying information would come up on the computer, Corporal Howell temporarily detained both Ms. Carter and Appellant and asked them to come to the police barracks so that they could check for outstanding warrants. Corporal Howell patted down Appellant

prior to his being transported to barracks and found about two or three hundred dollars in his pocket; however, he did not confiscate the money.

After confirming that both Appellant and Ms. Carter were who they had claimed to be, and that there were no outstanding warrants for their arrest, the troopers told them that they could leave.

After Appellant and Ms. Carter left the barracks, the troopers conducted a search, pursuant to a search warrant, of the Mitsubishi Eclipse. During the search, the troopers found a Rubbermaid plastic container filled with trail mix in the back seat behind the driver's seat. Inside the container, Trooper Long found 11.4 grams of cocaine. The cocaine was packaged as sixty-seven individual packages containing rocks of crack cocaine within a larger bag. The troopers did not find any type of drug paraphernalia or any means of ingesting the cocaine in the vehicle.

During the search, the troopers also found two cell phones in the vehicle. Trooper Long obtained a search warrant and identified the phones as belonging to Appellant and Ms. Carter. A search of Appellant's cell phone revealed text messages, which Corporal Howell later testified were consistent with drug trafficking.[2]

_____

[2] The content of these text messages does not appear in the certified record.

Appellant was charged with possession of a controlled substance and possession with intent to distribute a controlled substance (PWID). On October 16, 2012, Appellant proceeded to a jury trial.

> Cherry Carter was present and testified at the trial. She testified that she drove [Appellant] to Baltimore, Maryland from Hagerstown, Maryland on September 3, 2011, where [Appellant] picked up the cocaine. She then drove [Appellant] back to Hagerstown where [Appellant] made a drug sale. [Ms. Carter] next drove [Appellant] to Chambersburg, Pennsylvania where [Appellant] made additional sales of cocaine. [Ms. Carter] stated she agreed to drive [Appellant] around in exchange for cocaine. [Appellant] was supposed to have a large sale of cocaine in Chambersburg, but it did not occur, so they left Chambersburg around 7:00 a.m. on the morning of September 4, 2011, after which they were pulled over by Trooper Long. After they were pulled over, [Ms. Carter] testified that [Appellant] took the cocaine out of his pocket and placed it in the bowl of trail mix.

(Trial Court Opinion, 06/04/15, at 5-6 ) (footnote omitted).

Corporal Howell was also present at trial and testified as an expert in drug investigation and drug trafficking. (**See** N.T. Trial, 10/16/12, at 93). During his direct examination, the following exchange took place:

Q: So you are familiar with seeing the type of communications for drug trafficking as far as text messages. Correct?

A: Absolutely.

Q: Do you always know who typed up the message?

A: No. In fact, most of the time you don't. Unless you are doing a hard wire.

Q: So how are you able to figure out that this is a drug text rather than a non-drug text? Do you have to look at the context?

[Defense Counsel]: Objection, Your Honor. If I may approach?

THE COURT: Wait. He is testifying as an expert and he is talking about how do you know the difference. He is not talking about the contents of any message. So you can answer that question.

(*Id.* at 107-08).

The court recessed and outside of the presence of the jury heard arguments from counsel regarding admission of the text messages. (*See id.* at 109-15). During that discussion, the following exchange took place:

THE COURT: Now I am just asking you hypothetically, he has been recognized as an expert in drug investigation and drug trafficking, can he not be asked hypothetically did you review all of the text messaging on the phone that was identified as [Appellant's]? What is your opinion as to the content of that?

[The Commonwealth]: I would be happy to do it that way.

THE COURT: Is this drug trafficking in your opinion. And you cross-examine him. There is no specifics in there that talk about drug trafficking or anything else. He is an expert witness.

[Defense Counsel]: I understand that, Your Honor. But I still object to any reference to any of the text messages contained.

(*Id.* at 111). Ultimately the trial court ruled "you will not get into any of the specifics of the texts of what he said, but that he examined the traffic on this phone and he can render an opinion. I will give you the broadest latitude about cross-examination." (*Id.* at 115).

Corporal Howell's direct examination continued in the presence of the jury with the following exchange:

Q:  Corporal, did you have an opportunity to review the traffic of texts on Commonwealth Exhibit Number 14 on [Appellant's] cell phone?

A:  I have.

Q: In your expert opinion, did you find texts that were consistent with drug trafficking?

A: Some of them, yes.

Q: And many more that weren't?

A: Yes.

(*Id.* at 115-16).

On October 17, 2012, the trial court charged the jury prior to deliberation. (*See* N.T. Trial, 10/17/12, at 157-77). The court did not include, nor did Appellant request, any specific jury instruction regarding inadmissible evidence as the basis of expert opinions. (*See id.*). After deliberation, the jury found Appellant guilty of both counts. (*See id.* at 178).

On December 18, 2012, Appellant was sentenced to a period of incarceration of not less than five nor more than ten years. (*See* N.T. Sentencing, 12/18/12, at 9).

On April 8, 2015, Appellant timely filed his notice of appeal.[3] Pursuant to the trial court order, Appellant timely filed a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). The trial court entered an opinion on June 4, 2015. *See* Pa.R.A.P. 1925(a).

_____

[3] On September 18, 2013, the trial court granted Appellant's petition to reinstate appellate rights. (*See* Order, 9/18/13). Appellant timely filed his notice of appeal on October 18, 2013. On December 11, 2013, this Court dismissed Appellant's appeal for failure to comply with Pa.R.A.P. 3517. *See* Pa.R.A.P. 3517. After a hearing on March 6, 2015, the PCRA court reinstated Appellant's right to file a direct appeal. (*See* Order, 3/13/15).

Appellant raises one question for our review:

[1.] Did the trial court err by allowing the Commonwealth's expert to give an opinion that some of the text messages on [Appellant's] cell phone were consistent with drug trafficking, thereby allowing in evidence of electronic communications that were not authenticated and/or was inadmissible hearsay[?]

(Appellant's Brief, at 3 (most capitalization omitted)).

Appellant claims that the trial court erred in permitting the Commonwealth's expert, Corporal Howell, to give an expert opinion that Appellant was involved in drug trafficking rather than merely possession for personal use, which opinion was based, in part, on text messages from Appellant's cell phone that were consistent with drug trafficking. (**See** Appellant's Brief, at 8-13). Appellant argues that this testimony allowed evidence of electronic communications, the text messages which Corporal Howell referred to as a basis of his opinion, which were not authenticated and which constituted inadmissible hearsay. (**See id.**).

The Commonwealth contends that the question of whether the evidence was properly authenticated or was inadmissible hearsay evidence is not triggered in this matter, where the content of the text messages was never admitted. (**See** Commonwealth's Brief, at 8-10). Rather, the Commonwealth claims that the text messages were one of many indicia that formed the basis of Corporal Howell's expert opinion that Appellant was engaged in drug trafficking rather than possession for personal use. (**See id.**). Furthermore, the Commonwealth argues that even if this Court

determines that admission of testimony regarding the text messages was an error, such error was harmless.  (**See id.** at 11).  We agree.

Preliminarily, we note that this current question does not trigger an authentication analysis under the standard set forth in **Commonwealth v. Mosley**, 114 A.3d 1072 (Pa. Super. 2015), and **Commonwealth v. Koch**, 39 A.3d 996 (Pa. Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014) because here, the content of the text messages was not admitted into evidence.  **See Koch**, **supra** at 1005 (holding that the trial court abused its discretion in admitting text messages because there was no evidence that tended to substantiate that the appellant wrote the drug related texts); **Mosley**, **supra** at 1081-84 (concluding that the trial court erred in admitting the transcript of text messages into evidence where there was no evidence proving the appellant had authored the text messages).

Our standard of review concerning a trial court's admission of evidence is well settled.  "Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion."  **Mosley**, **supra** at 1081 (citing **Commonwealth v. Lilliock**, 740 A.2d 237 (Pa. Super. 1999)).  "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."  **Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa. Super. 2014) (citations and quotation marks omitted).

An expert witness is permitted to offer an opinion that is based on otherwise inadmissible evidence if those types of facts are reasonably relied on by experts in that field. *See* Pa.R.E. 703. The commentary to Rule 703 further states that when an expert bases his or her opinion on evidence which would otherwise be inadmissible, "the trial judge upon request, or on the judge's own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence." *Id.*, *Comment*.

> Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination. It is thus the burden of opposing counsel to explore and expose any weaknesses in the underpinnings of the expert's opinion.

*In re D.Y.*, 34 A.3d 177, 183 (Pa. Super. 2011), *appeal denied*, 47 A.3d 848 (Pa. 2012) (citation omitted).

Here, the trial court did not abuse its discretion in permitting Corporal Howell to render an opinion that Appellant was involved in drug trafficking rather than merely possession where Corporal Howell based that opinion on the presumptively inadmissible content of Appellant's cell phone. *See Commonwealth v. Glover*, 582 A.2d 1111, 1113-14 (Pa. Super. 1990) (reasoning that record of drug sales was relevant factor indicating possible drug transaction).

Moreover, even if admission of Corporal Howell's opinion was error, any error would have been harmless under the circumstances of this case.

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Hairston**, 84 A.3d 657, 671-72 (Pa. 2014), *cert. denied sub nom.* **Hairston v. Pennsylvania**, 135 S. Ct. 164 (2014).

> [N]ot all error at trial . . . entitles a [defendant] to a new trial, and [t]he harmless error doctrine . . . reflects the reality that the accused is entitled to a fair trial, not a perfect trial[.] Moreover, it is well established that an error which, when viewed by itself, is not minimal, may nonetheless be determined harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence.

**Mosley**, **supra** at 1080 (citations and quotation marks omitted).

In **Mosley**, this Court held that the trial court erred in admitting evidence of text messages on Mosley's cell phone where the messages were not clearly authenticated because there was no evidence that Mosley was the author of the messages and because the messages constituted hearsay. **See id.** at 1081-86. However, this Court concluded that even without the improperly admitted text messages, there was relevant, cumulative evidence indicative of drug activity that had been properly admitted at trial.

> [T]here was independent evidence showing that Mosley threw bags of drugs from a car he was driving, while being pursued by the police. Mosley's possession of two cell phones and U.S. currency on his person was consistent with drug activity, while the weight and packaging of the drugs was indicative of possession with the intent to deliver.

*Id.* at 1080 (citations omitted). The Court concluded that "if we discount the improperly admitted text messages . . . we conclude that there is substantially similar evidence showing that Mosley possessed the drugs with the intent to deliver." *Id.* at 1086.

Here, similarly, the properly admitted and uncontradicted evidence that Appellant possessed cocaine, and did so with the intent to deliver, was so overwhelming and the prejudicial effect of Corporal Howell's testimony regarding the text messages was so insignificant by comparison that the error could not have contributed to the verdict. *See Hairston*, *supra* at 671-72; *see also Mosely*, *supra* at 1086.

At trial, Trooper Long testified that he pulled over the Mitsubishi Eclipse after it was traveling under the speed limit in the left lane of Interstate 81. (*See* N.T. Trial, 10/16/12, at 49). He further testified that upon request, neither Appellant nor Ms. Carter could produce a driver's license and the registration and insurance which Ms. Carter provided him did not match the Mitsubishi Eclipse, but rather, were for a Ford F150 pick-up truck. (*See id.* at 51-53). Trooper Long also testified that after a search of the Mitsubishi Eclipse, pursuant to a search warrant, that the troopers found 11.4 grams of cocaine packaged in sixty-seven individual packages. (*See*

*id.* at 66-71, 137-43). The troopers did not find any drug paraphernalia or means of ingesting the cocaine in the vehicle. (***See id.*** at 117-18).

Furthermore, the Commonwealth introduced testimony of Ms. Carter.

> . . . She testified that she drove [Appellant] to Baltimore where [Appellant] picked up cocaine. She then drove [Appellant] back to Hagerstown and Chambersburg where [Appellant] made drug sales. [Ms. Carter] and [Appellant] left Chambersburg around 7:00 a.m. in the morning, where they were pulled over by Trooper Long. After they were pulled over, [Ms. Carter] testified that [Appellant] took the cocaine out of his pocket and placed it in the bowl of trail mix, indicating the cocaine was [Appellant's]. The bowl was found in close proximity to [Appellant]. Corporal Howell also testified that no crack pipes or other modes of ingestion were found in the vehicle, indicating the cocaine was for delivery and not for personal use. Also, Corporal Howell stated that the way the cocaine was packaged meant it was for sale and not personal use.

(Trial Ct. Op., at 12).

Therefore, we conclude that even if the trial court erred in permitting Corporal Howell to opine that Appellant was involved in drug trafficking rather than purely possession, which opinion was based on several indicia of drug trafficking including the text messages on Appellant's phone, such error was harmless. ***See Mosley***, ***supra*** at 1080-86. Accordingly, Appellant's issue does not merit relief.

Judgment of sentence affirmed.

Judge Bowes joins the Memorandum.

Judge Panella concurs in the result.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/2015