J-S44002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTONIO JOSEPH WALDO :
:
Appellant : No. 950 MDA 2022

Appeal from the Judgment of Sentence Entered June 13, 2022
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004651-2020

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED: JULY 10, 2023**

Antonio Joseph Waldo appeals from the judgment of sentence following his guilty plea to two counts each of rape and sexual assault, and one count each of involuntary deviate sexual intercourse and simple assault. Waldo argues that the expert improperly relied upon inadmissible hearsay in rendering his opinion that he was a sexually violent predator ("SVP") and that the evidence was insufficient to support the SVP determination. We affirm.

On August 26, 2020, the victim, Dianne DeMarco, who was approximately 66 years old, lived in a rooming house in Harrisburg. On that date, she heard a knock on her door, and believing it to be a friend, opened the door. Waldo walked in and began eating DeMarco's food. Thereafter,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Waldo punched DeMarco several times in the face. He then engaged in forcible sexual intercourse with DeMarco. DeMarco reported the assault to the police, who later located Waldo. Waldo admitted that he had assaulted DeMarco on August 26, 2020, and further stated that he had previously assaulted her on two occasions.

The police arrested Waldo, and the Commonwealth charged him with two counts each of rape and sexual assault, and one count each of involuntary deviate sexual intercourse and simple assault. Waldo agreed to enter a guilty plea to the offenses in exchange for an aggregate sentence of 15 to 30 years in prison plus an undefined term of probation. The trial court accepted Waldo's plea, deferred sentencing, and ordered Waldo to undergo an SVP assessment.

On June 13, 2022, the trial court conducted an SVP hearing, at which Dr. Robert Stein of the Pennsylvania Sexual Offender Assessment Board ("SOAB") testified. Prior to Dr. Stein's testimony, Waldo's counsel objected to hearsay statements relied upon by Dr. Stein in forming his expert opinion. Specifically, Waldo's counsel pointed out that Waldo's prior criminal history, Waldo's conduct on parole, and other information was based on inadmissible hearsay. The trial court denied the objection.

Dr. Stein testified that in completing his assessment, he reviewed, *inter alia*, the court order for the assessment; response from defense counsel; report from the board investigator; criminal information; complaint; affidavit of probable cause; police reports; Children & Youth records; Waldo's prior

criminal history, including sexual assaults of a 14-year-old girl and 3-year-old boy and a violent offense against his son; records from Dauphin County probation and Pennsylvania State Parole; treatment records; records from Pennsylvania Department of Corrections; and a prior SOAB parole-requested assessment and investigation. Dr. Stein further testified that he reviewed fifteen different criteria and ultimately determined that Waldo should be classified as an SVP. At the conclusion of the hearing, the trial court found Waldo to be an SVP. Thereafter, the trial court sentenced Waldo to 15 to 30 years in prison, followed by 5 years of probation. Waldo timely appealed.

On appeal, Waldo raises the following questions for our review:

1. Whether the SVP court erred in admitting Dr. Stein's expert report when inadmissible hearsay was impermissibly mixed with admissible testimony?

2. Did the SVP court err in determining [] Waldo a Sexually Violent Predator, when the Commonwealth's expert's opinion relied upon evidence not in the record?

Appellant's Brief at 6.

In his first claim, Waldo contends that Dr. Stein improperly relied on inadmissible hearsay in finding him to be an SVP. *See id.* at 16, 22, 25, 28. Specifically, Waldo asserts that Dr. Stein relied upon evidence which was not proven or substantiated through sworn testimony or admitted into evidence. *See id.* at 16, 20-21, 25-27, 28; *see also id.* at 21 (noting that Dr. Stein relied upon records in which he was not the interviewer or drafter of the records, including CYS records, probation and parole records, police

investigation reports, treatment records, and Department of Corrections records). Waldo further argues that Dr. Stein highlighted information that was not part of the factual summary in the guilty plea, including testimony that Waldo masturbated the victim and ejaculated on her; he committed a violent offense against his son; and he assaulted a 14-year-old girl. ***See id.*** at 21, 25-26.

Waldo claims that the instant case compares favorably to ***Commonwealth v. McClelland***, 233 A.3d 717, 736 (Pa. 2020) (holding that hearsay evidence alone was insufficient to make out a *prima facie* case at a preliminary hearing). ***See*** Brief for Appellant at 22-23. According to Waldo, similar due process protections must apply to SVP hearings, emphasizing that an SVP determination requires clear and convincing evidence while the Commonwealth has a lower standard to establish a *prima facie* case at a preliminary hearing. ***See id.*** at 25. Waldo further contends that the trial court's reliance on Pa.R.E. 703[1] to admit Dr. Stein's report is misplaced, because an expert's use of hearsay to carry the burden of proof would make

---

[1] Rule 703 states the following:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

the clear and convincing evidentiary burdening meaningless. ***See id.*** at 27-28. Waldo thus concludes that because it is impossible to sever the hearsay-based portion of Dr. Stein's expert opinion, the trial court abused its discretion in admitting the report. ***See id.*** at 28.

"A defendant … may … raise a challenge to the admissibility of evidence adduced by the Commonwealth at an SVP hearing; an appellate court may ultimately find such a challenge to be meritorious and that the defendant is entitled to a new SVP hearing." ***Commonwealth v. Baker***, 24 A.3d 1006, 1034 (Pa. Super. 2011) (citation omitted). "As a general rule, this Court's standard of review of a trial court's evidentiary ruling … is limited to determining whether the trial court abused its discretion." ***Commonwealth v. Dengler***, 890 A.2d 372, 379 (Pa. 2005) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id.*** (citation omitted).

> The procedure for determining SVP status is statutorily mandated and well-defined. Under revised Subchapter H of SORNA,[2] after

---

[2] The Legislature has amended SORNA several times. Relevantly, through Act 10, as amended by Act 29 ("SORNA II"), the Legislature divided sex offenders into two subchapters: Subchapter H, which applies to an offender who committed a sexually violent offense on or after December 20, 2012, ***see*** 42 Pa.C.S.A. §§ 9799.10-9799.42; and Subchapter I, which applies to an individual who committed a sexually violent offense on or after April 22, 1996, but before December 20, 2012, and whose period of registration or
*(Footnote Continued Next Page)*

a person has been convicted of an offense listed in [42 Pa.C.S.A. §] 9799.14, the trial court orders an assessment by the SOAB. The SOAB must assess all individuals convicted of sexually violent offenses to determine whether they should be classified as an SVP. When assessing whether a particular offender should be classified as an SVP, the board shall establish standards for evaluations and for evaluators conducting the assessments.

***Commonwealth v. Aumick***, 2023 WL 3939850, *4 (Pa. Super. 2023) (*en banc*) (citations, quotation marks, and footnote omitted).

When conducting SVP assessments,

All State, county and local agencies, offices and entities in this Commonwealth, including juvenile probation officers, shall cooperate by providing copies of records and information as requested by the board in connection with the court-ordered assessment and the assessment requested by the Pennsylvania Parole Board or the assessment of a delinquent child under section 6358 (relating to assessment of delinquent children by the State Sexual Offenders Assessment Board).

42 Pa.C.S.A. § 9799.24(c).

An assessment shall include, but not be limited to, an examination of the following:

(1)   Facts of the current offense, including:

      (i)     Whether the offense involved multiple victims.
      (ii)    Whether the individual exceeded the means necessary to achieve the offense.
      (iii)   The nature of the sexual contact with the victim.
      (iv)   Relationship of the individual to the victim.
      (v)    Age of the victim.

---

registration requirements under a former sexual offender registration law have not expired, ***see*** 42 Pa.C.S.A. §§ 9799.51-9799.75. Here, Subchapter H applies to Waldo.

      (vi)    Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

      (vii)   The mental capacity of the victim.

(2)    Prior offense history, including:

      (i)     The individual's prior criminal record.

      (ii)    Whether the individual completed any prior sentences.

      (iii)   Whether the individual participated in available programs for sexual offenders.

(3)    Characteristics of the individual, including:

      (i)     Age of the individual.

      (ii)    Use of illegal drugs by the individual.

      (iii)   A mental illness, mental disability or mental abnormality.

      (iv)   Behavioral characteristics that contribute to the individual's conduct.

(4)    Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

***Id.*** § 9799.24(b)(1)-(4).

Further, "[an] SOAB expert opinion falls within the general rules regarding expert witnesses." ***Aumick***, 2023 WL 3939850, *5; ***see also*** Pa.R.E. 702 ("Testimony by Expert Witnesses"); Pa.R.E. 703 ("Bases of an Expert's Opinion Testimony"). "If the expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705.

> The statute governing the SVP assessment does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings. In fact, the statute requires state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment, without limitation on the "admissibility" of that information. As a result, it stands to reason

that some if not many of the facts necessary to perform the SVP assessment might not have been proven beyond a reasonable doubt. Thus, we hold an SOAB expert opinion falls within the general rules regarding expert witnesses. As such, a SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted. The SOAB expert must state the facts or data on which the opinion is based. Then, the rules of evidence place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination. Opposing counsel bears the burden of exposing and exploring any weaknesses in the underpinnings of the expert's opinion.

*Aumick*, 2023 WL 3939850, at *7 (citations and ellipses omitted).

Additionally,

it is clear that the [L]egislature intended that the SOAB member consider more than the limited facts included in a plea colloquy, and that the SOAB member undertake to review and consider the information contained in records provided by state, county and local agencies, offices and entities in this Commonwealth when making an SVP assessment and preparing a statutorily compliant written report. To be sure, it would be the rare occasion on which the SOAB member would be able to fulfill its statutory obligations if its SVP assessments and written reports were limited to facts contained in a plea colloquy, admitted into evidence, or determined by the trier of fact.

Moreover, in the context of an SVP hearing, the judge is not tasked with evaluating the veracity of the facts underlying the expert's testimony. Indeed, the facts presented at an SVP hearing are not being offered for the truth of the matter asserted, as would be the case in a true hearsay scenario. Instead, they constitute information, gleaned from records which are reasonably relied on in SOAB evaluations, that is presented to the trial court solely to supply the basis for the expert's opinion in accordance with our Rules of Evidence.

*Id.* at *8 (citations and footnote omitted).

Based upon this Court's decision in **Aumick**, the facts or data the expert used in rendering his SVP assessment need not be admissible for the expert's opinion to be admitted. Here, Dr. Stein utilized evidence commonly used by experts in making an SVP determination. **See** Trial Court Opinion, 8/30/22, at 5; **see also** Pa.R.E. 703; **Aumick**, 2023 WL 3939850, at *7. Therefore, Dr. Stein was permitted to discuss and consider otherwise inadmissible evidence in rendering his opinion for the SVP designation. **See Aumick**, 2023 WL 3939850, at *8 (holding that an expert conducting an SVP assessment is not limited to consider information only admitted at trial or at the guilty plea proceedings). Importantly, Waldo had the opportunity to defend himself against Dr. Stein's opinion by presenting his own defense expert at the SVP hearing, which he chose not to do, and by cross-examining Dr. Stein. **See id.** at *9; **see also In re D.Y.**, 34 A.3d 177, 183 (Pa. Super. 2011) ("Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." (citation omitted)). Finally, the **Aumick** Court rejected extending the reasoning in **McClelland** to an SVP hearing, noting that "an SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment." **Id.** at *8 n.13. Accordingly, Waldo's first claim is without merit.

In his second claim, Waldo contends that the evidence was insufficient for the trial court to make its SVP determination. *See* Appellant's Brief at 29. Waldo again argues that Dr. Stein's opinion was tainted by his reliance upon hearsay evidence. *See id.* at 29, 31-32. Waldo asserts that because Dr. Stein was the sole witness at the SVP hearing, and his testimony was tainted by inadmissible hearsay evidence, the evidence was insufficient to support a finding that he is an SVP. *See id.* at 32.

Our standard and scope of review of a challenge to the sufficiency of the evidence relating to a trial court's SVP designation is as follows:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an SVP. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015) (citation and brackets omitted).

Here, in rendering his SVP recommendation, Dr. Stein testified that he considered, *inter alia*, the court order for the assessment, report from the SOAB investigator, the criminal information, complaint, and affidavit of probable cause, prior criminal history records, treatment records, records from the Pennsylvania Department of Corrections, and a prior Sex Offender Board assessment and investigation. *See* N.T., 6/13/22, at 8-9, 24-25, 32-

- 10 -

33. Dr. Stein further testified that Waldo did not participate in the evaluation. *See id.* at 9.

Dr. Stein noted that he reviewed fifteen different criteria for the issues of mental abnormality and predatory behavior. *See id.* at 12-19, 26. In particular, Dr. Stein testified that Waldo had a mild intellectual disability, and a history of homelessness, substance abuse, and unstable jobs. *See id.* at 18. Dr. Stein noted that the convictions generating this assessment involved Waldo preying on a 66-year-old woman, including masturbating on the victim, ejaculating on the victim, forcing oral sex on the victim, and physically assaulting the victim. *See id.* at 9, 10, 17; *see also id.* at 20-21 (highlighting that Waldo had assaulted the victim on two prior occasions). Dr. Stein also observed that Waldo had previously asked a 14-year-old girl to see her breasts and touched a 3-year-old boy's penis. *See id.* at 9-10, 11, 14, 18, 29-30. According to Dr. Stein, Waldo had a mental abnormality or a personality disorder and that Waldo acted with predatory behavior. *See id.* at 19, 22, 31. Dr. Stein concluded that the evidence was sufficient to support a finding that Waldo should be classified as an SVP. *See id.* at 24, 33; *see also id.* at 23 (noting that Dr. Stein's report was entered into evidence without objection). At the conclusion of the SVP hearing, the trial court determined that Waldo is an SVP. *See id.* at 39.

Viewed in a light most favorable to the Commonwealth, the record provides clear and convincing evidence that Waldo is an SVP. In fact, Dr.

Stein's opinion, rendered with a reasonable degree of profession certainty, "constituted sufficient evidence for the trial court to make its SVP determination." *Aumick*, 2023 WL 3939850, at *8.

In effect, Waldo merely restates his arguments from his first claim regarding Dr. Stein's consideration of facts and data that he had been made aware of or personally observed outside the evidence admitted at the guilty plea proceedings. However, as *Aumick* concluded, Dr. Stein was permitted to consider this evidence in rendering his opinion as to whether Waldo should be classified as an SVP. *See id.* (noting that an expert's reliance on inadmissible facts to explain the basis of their SVP opinion does not constitute substantive evidence; nevertheless, the expert's opinion itself is substantive evidence). Moreover, to the extent Waldo asks this Court to reweigh the evidence presented at the SVP hearing, we decline to do so. *See id.* at *9 (noting that challenge to the information considered by the expert in making an SVP assessment goes to the weight rather than the sufficiency of the evidence and further declining to reweigh the evidence presented at the SVP hearing).[3] Accordingly, Waldo's second claim is without merit.

Judgment of sentence affirmed.

Judge McLaughlin joins the memorandum.

_____

[3] Notably, as in *Aumick*, Waldo did not raise a weight of the evidence challenge to his SVP determination before the trial court. *See* Pa.R.Crim.P. 607. Therefore, he failed to preserve such a challenge on appeal. *See* *Aumick*, 2023 WL 3939850, at *9 n.15.

Judge Pellegrini concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/10/2023